Colleen E. McCarty
Nevada Bar No. 13186
cmccarty@foxrothschild.com
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503

David Aronoff (*Pro Hac Vice* forthcoming)
daronoff@foxrothschild.com
**FOX ROTHSCHILD LLP**
10250 Constellation Blvd., Suite 900
Los Angeles, CA 90067
Telephone: (310) 598-4150
Facsimile: (310) 556-9828

Attorneys for Defendant
R&R PARTNERS, INC.

Marc A. Saggese
Nevada Bar No. 7166
Marc@maxlawnv.com
**LAW OFFICES OF SAGGESE & ASSOCIATES**
732 S. Sixth Street, Suite 201
Telephone: (702) 778-8883
Facsimile: (702) 778-8884

Attorney for Defendant
FARRA FOXDOG PRODUCTIONS, LLC

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| LEVY PRODUCTION GROUP, LLC, a Nevada limited liability company,<br><br>                    Plaintiff,<br>          v.<br><br>R&R PARTNERS, INC., a Nevada corporation; FARRA FOXDOG PRODUCTIONS, LLC; ROE CORPORATIONS 1 through 10; and DOES 11 through 20,<br><br>                    Defendants. | Case No.<br><br>(Removal from District Court, Clark County, Nevada, Case No. A-22-854618-B)<br><br>**PETITION FOR REMOVAL OF DEFENDANT R&R PARTNERS, INC.; AND CONSENT TO REMOVAL OF DEFENDANT FARRA FOXDOG PRODUCTIONS, LLC** |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE THAT** pursuant to 28 U.S.C. §§ 1441 and 1446, defendant R&R Partners, Inc. ("R&R"), hereby removes to the United States District Court for the District of Nevada, the civil action styled *Levy Production Group, LLC v. R&R Partners, Inc., et al*., Case No. A-22-854618-C, which was filed in the District Court of the State of Nevada, County of Clark (the "State Court Action"). This civil action is removable pursuant to 28 U.S.C. §§ 1331 and 1441(a), in that federal question jurisdiction exists pursuant to the Copyright Act of 1976, 17 U.S.C. § 101 *et seq*. In accordance with the requirement of 28 U.S.C. § 1446(a), a "short and plain statement of the grounds for removal" is set forth below.

Defendant Farra Foxdog Productions, LLC ("Farra Foxdog") hereby consents to the removal by R&R.  R&R and Farra Foxdog  are collectively referred to herein as "Defendants."

## <u>INTRODUCTION</u>

1.     On or about June 27, 2022, plaintiff Levy Production Group, LLC ("Plaintiff") filed its Complaint ("Complaint") in the District Court of the State of Nevada, County of Clark, in the State Court Action.

2.     On June 29, 2022, the Summons and Complaint, were delivered to, and purportedly served upon, Farra Foxdog.

3.     On July 8, 2022, the Summons and Complaint, were delivered to, and purportedly served upon, R&R.

4.     Thirty (30) days have not yet expired since this action became removable to this Court by R&R.

5.     Farra Foxdog consents to the removal of this action by R&R pursuant to 28 U.S.C. §§ 1446 (b)(2)(B) & (b)(2)(C).

6.     **Exhibit A** hereto constitutes "a copy of all process, pleadings and orders served upon" the Defendants in the State Court Action.  28 U.S.C. § 1446(a).

7.     **Exhibit B** hereto is a copy of the court's docket in the State Court Action. / / /

8.      Plaintiff's Complaint alleges that Plaintiff presented to R&R in 2019 an idea for a television show in the form of a written "treatment" for "an entertainment magazine style, weekly video series … for the Las Vegas Convention and Visitors Authority streaming platform" that "would recap highlights of what had happened and what was happening in Las Vegas, promote what was upcoming in Las Vegas, and give viewers behind-the-scenes, exclusive, Las Vegas-related content" (hereinafter, "Plaintiff's Series").   Cmpt. ¶¶ 6, 7, 10, 11.  The working title of Plaintiff's Series was "What's Up Vegas." *Id*. ¶ 7.

9.      Plaintiff further alleges that Defendants' video series entitled, "Vegas On," "substantially [] cop[ies]" Plaintiff's Series, which Plaintiff claims constitutes its "intellectual property." *Id*. ¶¶ 13, 23, 25, 36-40.

10.     The Complaint further alleges that Defendants have been unjustly enriched through their alleged wrongful copying of Plaintiff's intellectual property. *Id*. ¶¶ 41-45.

11.     Based upon these allegations, Plaintiff purports to assert the following alleged causes of action: (1) misappropriation of trade secrets; (2) conversion of intellectual property; (3) unjust enrichment; and (4) breach of contract.

12.     On July 28, 2022, Farra Foxdog and R&R filed their respective Answers in the State Court Action.

13.     Because the State Court Action is pending in the District of Nevada of the State of Nevada, County of Clark, removal of this action to this District Court is proper under 28 U.S.C. § 1446(a).

14.      As explained below, this Court has subject matter jurisdiction over this case on the basis that federal question jurisdiction exists pursuant to the Copyright Act of 1976, 17 U.S.C. § 101 *et seq*. *See* 28 U.S.C. § 1331.

15.     Defendants will file a copy of this Notice of Removal with the clerk of the District Court of the State of Nevada, County of Clark, and will serve a copy on Plaintiff, as required by 28 U.S.C. § 1446(d).

/ / /

/ / /

PETITION FOR REMOVAL AND CONSENT

## THE COURT HAS FEDERAL QUESTION JURISDICTION

## PURSUANT TO THE COPYRIGHT ACT

16.    Removal of the State Court Action to this Court is proper under 28 U.S.C. § 1441(a) because the State Court Action is a civil action over which this Court has original jurisdiction founded upon a claim or right "arising under" the laws of the United States, within the meaning of 28 U.S.C. § 1331.

17.    Removal is proper when federal law preempts a state claim. *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983); *Hawaii ex rel. Louie v. HSBC Bank Nev., N.A.*, 761 F.3d 1027, 1034 (9th Cir. 2014); *Santa-Rosa v. Combo Records*, 471 F.3d 224, 227 (1st Cir. 2006); *Rosciszewski v. Arete Assocs.*, 1 F.3d 225, 230-31 (4th Cir. 1993); *Ehat v. Tanner*, 780 F.2d 876, 878 (10th Cir. 1985). When federal law "completely preempts" an area of state law, a claim purporting to assert a right based upon that state law is considered to be "arising under" federal law and may be removed to federal court. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987); *see also Hawaii ex rel. Louie*, 761 F.3d at 1034 ("[W]hen a federal statute wholly displaces state law and provides the exclusive cause of action for a plaintiff's requested relief, we must 'recharacterize a state law complaint . . . as an action arising under federal law.' In such cases, federal law 'completely preempts' the state law claims.") (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 64 (1987), and *Franchise Tax Bd.*, 463 U.S. at 24); *see also Republican Party of Guam v. Gutierrez*, 277 F.3d 1086, 1088 (9th Cir. 2002).

18.    The complete preemption doctrine extends to any "federal statute that both preempts state law and substitutes a federal remedy for that law, thereby creating an exclusive federal cause of action." *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004). The Copyright Act is one such federal statute. *Id.* Section 301 of the Copyright Act expressly prohibits states from legislating in the area of copyright law.  17 U.S.C. § 301(a); 28 U.S.C. § 1338(a)).

19.    The Copyright Act's subject matter includes "original works of authorship fixed in any tangible medium of expression." 17 U.S.C. § 102(a).  Although copyright protection does not extend to an "idea or concept" (17 U.S.C. § 102(b)), courts have consistently held ideas and concepts fall within the "subject matter of copyright" for the purposes of preemption analysis

because "scope and protection are not synonymous." *Entous v. Viacom Intern., Inc*., 151 F. Supp. 2d 1150, 1159 (C.D. Cal. 2001); *U.S. Ex Rel. Berge v. Bd. of Trs. of Univ. of Ala*., 104 F.3d 1453, 1463 (4th Cir. 1997), *cert. denied*, 522 U.S. 916 (1997) (state law claim for conversion of "ideas and methods" was preempted).

20.    "It is important to note that the scope of preemption under the Copyright Act is actually broader than the Act's protection." *Singh v. Nanayakkara*, No. 2:13-CV-09220-ODW, 2014 WL 842774, at *4 (C.D. Cal. Mar. 4, 2014). "[T]the work(s) upon which a state law claim is based need only be within the 'subject matter' of copyright; their actual protection thereunder is irrelevant to a preemption analysis." *Id*. (quoting *Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1189 (C.D. Cal. 2001)).

21.    Moreover, the defendant need not own the copyright at issue for copyright preemption to apply. *Jules Jordan Video, Inc. v. 144942 Canada Inc*., 617 F.3d 1146, 1154–55 (9th Cir. 2010) ("Whether a claim is preempted under Section 301 does not turn on what rights the alleged infringer possesses, but on whether the rights asserted by the plaintiff are equivalent to any of the exclusive rights within the general scope of the copyright.").

22.    The Court of Appeals for the Ninth Circuit has held that a state law claim is preempted by the Copyright Act if "the 'subject matter' of the state law claim falls within the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103," and (2) "the rights asserted under state law are equivalent to the rights contained in 17 U.S.C. § 106, which articulates the exclusive rights of copyright holders." *Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134, 1137-38 (9th Cir. 2006) (citing *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1003 (9th Cir. 2001)); *see also Del Madera Props. v. Rhodes & Gardner*, 820 F.2d 973, 977 (9th Cir. 1987), *overruled in unrelated part on other grounds, Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994). "The copyright is the right to control the work, including the decision to make the work available to or withhold it from the public." *Laws*, 448 F.3d at 1137.

23.    "To survive preemption, the state cause of action must protect rights which are qualitatively different from the copyright rights." *Del Madera Props*., 820 F.2d at 977. To avoid

/ / /

preemption, the state law claim must have an extra element that "*transform[s] the nature* of the action." *Laws*, 448 F.3d at 1144 (emphasis added).

24.    A plaintiff may not avoid or circumvent federal jurisdiction by pleading a disguised copyright claim as arising under state law; otherwise, "the preemption provision would be useless, and the policies behind a uniform Copyright statute would be silenced." *Daboub v. Gibbons*, 42 F.3d 285, 290 (5th Cir. 1995).

25.    In the present case, this Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), because the Complaint alleges at least two claims that are preempted under the Copyright Act because they assert rights that are equivalent to the exclusive rights within the general scope of copyright in works of authorship that are fixed in a tangible medium of expression – *i.e.*, the Complaint's second claim for "Conversion of Intellectual Property" and the third claim for "Unjust Enrichment." *See* 17 U.S.C. § 301(a).

26.    The first element of Copyright Act Section 301(a) preemption is satisfied, since the subject matter of Plaintiff's claims are copyright-protected "treatments" for an "entertainment magazine style, weekly video series" "that would recap highlights of what had happened and what was happening in Las Vegas, promote what was upcoming in Las Vegas, and give viewers behind-the-scenes, exclusive, Las Vegas-related content." *See, e.g.*, Cmpt. ¶¶ 6, 7, 11, 12.  Plaintiff's Complaint attaches these "treatments" as Exhibits 1-3, which, Plaintiff alleges, are "tangible, full-color, multi-page, graphic depictions … that contain[] both images and text that provide[] detailed descriptions of the content of [Plaintiff's] Series." *Id.* ¶ 11 & Exs. 1-3. These are plainly works that fall within the subject matter of copyright because Section 102(a)(6) of the Copyright Act extends copyright protection to "literary works," "pictorial, graphic…works," and "audiovisual works." 17 U.S.C. § 102 (a)(1), (a)(6).

27.    The second element of Section 301(a) preemption is also satisfied. The "state law" denominated causes of action for "conversion of intellectual property" and "unjust enrichment" are based on allegations regarding the supposed copying of Plaintiff's Series and constitute thinly-disguised claims for copyright infringement. For example, Plaintiff alleges that "the content of [Defendants' allegedly infringing production] is virtually identical to the content of The Series that

was created and developed [by Plaintiff], and was not the result of an independent creation…." Cmpt. ¶ 24.  Additionally, (a) Plaintiff's "conversion of intellectual property" claim alleges that Defendants' video series "substantially [] cop[ies]"[1] the Plaintiff's Series, which Plaintiff avers is its "intellectual property" (Cmpt. ¶¶ 13, 23, 25, 36-40); and (b) Plaintiff's unjust enrichment claim alleges that Defendants have been unjustly enriched through their alleged wrongful use of Plaintiff's "valuable intellectual property" (*id.* ¶¶ 41-45).

28.    These claims thus seek to enforce rights that are "equivalent" to the exclusive rights safeguarded by Section 106 of the Copyright Act, including the exclusive rights of reproduction, distribution, display, and the creation of derivative works.  17 U.S.C. § 106; *see, e.g.*, *Halpern v. Uber Techs., Inc.*, No. 15-CV-02401-JSW, 2015 WL 4572433, at *4 (N.D. Cal. July 29, 2015) (holding conversion claim preempted by Copyright Act);  *Blue Nile, Inc. v. Ice.com, Inc.*, 478 F. Supp. 2d 1240, 1250 (W.D. Wash. 2007) (holding unjust enrichment claim based on alleged copying preempted by Copyright Act).

29.    This Court has supplemental jurisdiction over Plaintiff's remaining state law claims. *See* 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy….").

30.    Accordingly, removal of the entire State Court Action is warranted.

## THE REMAINING REQUIREMENTS FOR REMOVAL HAVE BEEN SATISFIED

31.    All procedural requirements for removal have been satisfied.

32.    This Notice of Removal is timely as required by 28 U.S.C. § 1446(b), because it is filed not more than one year following the commencement of the action and within thirty (30) days of the service of the Summons and Complaint upon R&R. *See* 28 U.S.C. §§ 1446(b)(2)(B) ("Each defendant shall have 30 days after receipt by or service on that defendant of the initial pleading or

---

[1] Plaintiff's allegation that "Vegas On" is "**substantially** a copy" of Plaintiff's Series (Cmpt. ¶ 23) appears intended to invoke copyright protection without explicitly pleading a copyright claim since the test for copyright infringement requires a determination that the two works are "**substantially** similar." *See e.g., Silas v. Home Box Off., Inc.,* 201 F. Supp. 3d 1158, 1171 (C.D. Cal. 2016)*, aff'd,* 713 F. App'x 626 (9th Cir. 2018) (emphasis added).

summons described in paragraph (1) to file the notice of removal."); 1446(b)(2)(C) ("If defendants are served at different times, and a later-served defendant files a notice of removal, any earlier-served defendant may consent to the removal even though that earlier-served defendant did not previously initiate or consent to removal.").

33.     Removal to this Court and this division is proper, insofar as the State Court Action was pending in the District of Nevada of the State of Nevada, County of Clark, and the United States District Court for the District of Nevada embraces the location of the state court in which the State Court Action was filed.  *See* 28 U.S.C. §§ 1441(a) and 1446(a).

34.     This notice of removal is accompanied by true and correct copies of all pleadings, process and orders on file in the District of Nevada of the State of Nevada, County of Clark. *See* 28 U.S.C. § 1446(a).

35.     Pursuant to 28 U.S.C. § 1446(d), concurrently with the filing of this Notice of Removal, Defendants are serving written notice of the filing of this Notice of Removal, with a copy of this Notice of Removal attached, upon Plaintiff's counsel. Additionally, Defendants are filing a copy of this Notice of Removal (including the materials filed in support hereof) with the Clerk of the District Court for the State of Nevada, County of Clark (the court from which the State Court Action was removed). *See* 28 U.S.C. § 1446(d).

36.     Both of the undersigned Defendants have consented to removal, and no other defendants have been named or properly served in the State Court Action. *See* 28 U.S.C. § 1446(b)(2)(A) ("all defendants who have been properly joined and served must join in or consent to the removal of the action"). Defendants have not previously sought similar relief with respect to this matter.

37.     The allegations in this Notice of Removal are true and correct.

38.     Accordingly, this civil action is properly removable to the United States District Court for the District of Nevada.

/ / /

/ / /

/ / /

**WHEREFORE**, Defendants respectfully request that the State Court Action be removed to this Court and placed on the docket of this Court for further proceedings as though originally instituted in this Court. If any question arises as to the propriety of the removal of this action, Defendants respectfully request the opportunity to present a brief and oral argument in support of their position that this civil action is removable.

Dated:  August 5, 2022

**FOX ROTHSCHILD LLP**

By      */s/ Colleen E. McCarty*
Colleen E. McCarty
cmccarty@foxrothschild.com
Nevada Bar No. 13186
1980 Festival Plaza Drive, Suite 700
Las Vegas, NV 89135
Telephone: (702) 262-6899

David Aronoff (*Pro Hac Vice* forthcoming)
daronoff@foxrothschild.com
**FOX ROTHSCHILD LLP**
10250 Constellation Blvd., Suite 900
Los Angeles, CA 90067
Telephone: (310) 598-4150
Facsimile: (310) 556-9828
Attorneys for Defendant
R&R PARTNERS, INC.

Dated:  August 5, 2022

**LAW OFFICES OF SAGGESE & ASSOCIATES**

By      */s/ Marc Saggese*
Marc Saggese
Nevada Bar No. 7166
Marc@maxlawnv.com
732 S. Sixth Street, Suite 201
Telephone: (702) 778-8883
Attorneys for Defendant
FARRA FOXDOG PRODUCTIONS, LLC.

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I am an employee of Fox Rothschild LLP, and on the 5th day of August, 2022, and pursuant to FRCP 5(b), a copy of the foregoing **PETITION FOR REMOVAL OF DEFENDANT R&R PARTNERS, INC.; AND CONSENT TO REMOVAL OF DEFENDANT FARRA FOXDOG PRODUCTIONS, LLC** was served via the Court's electronic filing system to the parties listed below:

Bradley L. Booke, Esq.
LAW OFFICE OF BRADLEY L. BOOKE
10161 Park Run Drive, Suite 150
Las Vegas, NV 89145
brad.booke@laebooke.com
*Attorneys for Plaintiff*
*Levy Production Group, LLC*

Marc A. Saggese, Esq.
Mark J. Willoughby, Esq.
SAGGESE & ASSOCIATES, LTD.
732 S. Sixth Street, Suite 201
Las Vegas, Nevada 89101
Marc@MaxLawNV.com
MarkW@MaxLawNV.com
*Attorneys for Defendant*
*Farra Foxdog Productions, LLC*

                                                              */s/ Sherry Harper*
                                                    An employee of Fox Rothschild LLP

# EXHIBIT A

Electronically Filed
6/27/2022 6:26 AM
Steven D. Grierson
CLERK OF THE COURT

1

**COMP**
Bradley L. Booke #2662
LAW OFFICE OF BRADLEY L. BOOKE
10161 Park Run Drive #150
Las Vegas, Nevada 89145
702-241-1631
866-297-4863 Fax
brad.booke@lawbooke.com
Attorney for Plaintiff

CASE NO: A-22-854618-C
Department 4

2

3

4

5

6
                    **DISTRICT COURT**
7
                 **CLARK COUNTY, NEVADA**

8

LEVY PRODUCTION GROUP,LLC, a )   Case No.: A-15-720245-C
9  Nevada limited liability company,   )
                                       )   Dept. No. 16
10         Plaintiffs,                  )
                                       )
11      -vs-                            )
                                       )
12                                      )
   R&R PARTNERS, INC., a Nevada         )   **COMPLAINT AND JURY DEMAND**
13 corporation; FARRA FOXDOG            )
   PRODUCTIONS, LLC; ROE               )
14 CORPORATIONS 1-10; JOHN DOES 11-20, )
                                       )
15                                      )
16         Defendants.                  )
   _____)

17

18          Plaintiff, through counsel, for its causes of action, alleges as follows:

19          1.      Plaintiff Levy Production Group, LLC is a Nevada limited liability company that

20   is in the business of creating, developing, and producing video content for distribution through

21   various media, including over-the-air broadcast, cable networks, and streaming services.

22          2.      Defendant R&R Partners, Inc. is a Nevada corporation that operates as an

23   advertising agency.  Defendant R&R Partners is doing business and has been doing business in

24   Clark County, Nevada at all times relevant to this Complaint.

25          3.      Defendant Farra Foxdog Productions, LLC is a Nevada limited liability company

26   that is in the video and audio production business.  Defendant Farra Foxdog Productions is doing

27   business and has been doing business in Clark County, Nevada at all times relevant to this

28   Complaint.

                                        -1-

4.      Defendants Roe Corporation 1-10 and Defendants John Doe 11-20 are entities and individuals that are third parties or affiliates, agents, and employees of Defendant R&R Partners and Defendant Farra Foxdog, whose true identities are presently unknown, whose acts and omissions, in concert with Defendant R&R Partners and Defendant Farra Foxdog, are described below in the section of this Complaint entitled "FACTS COMMON TO ALL CAUSES OF ACTION." The true identities of these entities and individuals will be added by way of substitution to this Complaint when ascertained.

5.      The Eighth Judicial District Court, Clark County, has subject matter jurisdiction of this action pursuant to Article 6, Section 6 of the Constitution of the State of Nevada.

FACTS COMMON TO ALL CLAIMS FOR RELIEF

6.      Beginning in mid-2019, Levy Production Group created and began development of an entertainment magazine style, weekly video series (hereafter "The Series"), for digital distribution on a dedicated website for the Las Vegas Convention and Visitors Authority or a streaming platform.

7.      As created by Levy Production Group, The Series would recap highlights of what had happened and was happening in Las Vegas, promote what was upcoming in Las Vegas, and give viewers behind-the-scenes, exclusive, Las Vegas-related content. Levy Production Group developed the phrase, "What's Up Vegas" as a working title for The Series.

8.      The Series that was created and developed by Levy Production Group is a compilation, program, product, system, and design that derives independent economic value, actual and potential, from not being generally known to, and not being readily ascertainable by proper means, by the public or by any other persons who can obtain commercial or economic value from its disclosure or use.

9.      The Series is the valuable, proprietary, intellectual property of Levy Production Group.

10.     Beginning in the Summer of 2019, representatives of Levy Production Group held numerous meetings with representatives of Defendant R&R Partners during which Levy Production Group presented detailed information to Defendant R&R Partners about The Series.

-2-

11.     Levy Production Group's presentations to representatives of Defendant R&R Partners included tangible, full-color, multi-page, graphic depictions called "treatments" that contained both images and text that provided detailed descriptions of the content of The Series. An example of the material that Levy Production Group presented to Defendant R&R Partners is attached hereto as Exhibit 1.

12.     Over the course of Levy Production Group's presentations to Defendant R&R Partners, the content to be included in The Series became more closely and specifically defined, as exemplified by the material that is attached hereto as Exhibit 2 and Exhibit 3, and the working title "Only Vegas" was considered.

13.     In making presentations to Defendant R&R Partners, Levy Production Group communicated to Defendant R&R Partners that The Series was Levy Production Group's creative, proprietary, intellectual property and that Defendant R&R Partners could, for proper consideration to be agreed upon, be used by Defendant R&R Partners for its client, the Las Vegas Convention and Visitors Authority.

14.     At no time during any of the communications between Levy Production Group and Defendant R&R Partners did any representative of Defendant R&R Partners state or imply that it had previously seen or received from any third party any content that was alike or similar to The Series.

15.     The detailed presentations by Levy Production Group to Defendant R&R Partners concerning The Series, and many of the discussions between the parties concerning The Series, are memorialized in writings that were exchanged by and between Levy Production Group and Defendant R&R Partners, all of which are incorporated herein by this reference.

16.     In making presentations to Defendant R&R Partners, Levy Production Group made reasonable efforts under the circumstances to maintain the secrecy of The Series by, among other things, communicating to Defendant R&R Partners that it was making an exclusive proposal to Defendant R&R Partners before offering The Series to or for the use of any other person or entity.

17.     By early 2020, the discussions between Levy Production Group and Defendant R&R Partners concerning The Series had advanced to the point that Defendant R&R Partners requested that Levy Production Group prepare a budget proposal for production of three episodes. Levy Production Group prepared and delivered a detailed budget for three episodes, which is incorporated herein by this reference.

18.     In early 2020, as the budget was being reviewed, the COVID pandemic struck Las Vegas and the world and all work on all projects by all of Las Vegas, including the parties' work on The Show, came to a full stop.

19.     In late Spring 2020, communications between Levy Production Group and Defendant R&R Partners were renewed as the parties recognized the post-COVID importance and value of promoting Las Vegas to the world.  Defendant R&R Partners requested, and Levy Production Group provided, a written, detailed, production proposal and a written, detailed distribution proposal for The Show.

20.     During the course of Levy Production Group's meetings with and presentations to Defendant R&R Partners concerning The Series, and for the purpose of assuring confidentiality between the parties, the parties executed and entered a Mutual Non-Disclosure Agreement.  In executing the Mutual Non-Disclosure Agreement, Defendant R&R Partners acknowledged in writing that The Series was the valuable intellectual property of Levy Production Group.

21.     Not long after the Mutual Non-Disclosure Agreement was executed, without any prior indication that production and distribution of The Series would not go forward, Defendant R&R Partners informed Levy Production Group that the project was no longer being considered and would be revisited during the first quarter of 2021.

22.     However, reconsideration of production or distribution of The Series by Levy Production Group did not occur.

23.      Then, in February 2022, with no foreknowledge and to the complete surprise of Levy Production Group, Defendant Farra Foxdog, in collaboration with Defendant R&R Partners and in what Defendant Farra Foxdog described as a "partnership" with the Las Vegas Convention and Visitors Authority launched a streaming video production called "Vegas On" that is

substantially a copy of The Series that was created and developed by, and is the valuable intellectual property of, Levy Production Group.

24. Defendant Farra Foxdog publicly represented that "Vegas On" will "showcase all of the amazing events in Las Vegas, the hottest restaurants, attractions, shows, sports, and give you some insider tips in our "Vegas Hacks" segment, which description is an admission by Defendant Farra Foxdog that the content of "Vegas On" is virtually identical to the content of The Series that was created and developed by Levy Production Group, and was not the result of an independent creation by Defendant Farra Foxdog.

25. Since its launch in February 2022, Defendant Farra Foxdog and Defendant R&R Partners have caused approximately fifteen (15) episodes of "Vegas On" to be produced and streamed on VisitLasVegas.com, for which Defendant R&R Partners and Defendant Farra Foxdog have been paid consideration by the Las Vegas Convention and Visitors Authority.

<u>FIRST CLAIM FOR RELIEF: MISAPPROPRIATION OF TRADE SECRETS</u>

26. Levy Production Group realleges the allegations contained in the preceding paragraphs the same as if set forth herein in full.

27. Levy Production Group is the Owner, as defined in N.R.S. 600A.030(3), of the "What's Up Vegas/Only Vegas" series.

28. The "What's Up Vegas/Only Vegas" series is a Trade Secret as defined in N.R.S. 600A.030(5).

29. By their acts and/or omissions as described above, Defendant R&R Partners, Defendant Farra Foxdog, Roe Corporations 1-10, John Does 11-20, and all persons and entities acting in concert with Defendant R&R Partners, Defendant Farra Foxdog, Roe Corporations 1-10, John Does 11-20, have engaged in Misappropriation, as defined in N.R.S. 600A.030(2), of a Trade Secret of the Owner, Levy Production Group.

30. By their acts and/or omissions as described above, Defendant R&R Partners, Defendant Farra Foxdog, Roe Corporations 1-10, John Does 11-20, and all persons and entities acting in concert with Defendant R&R Partners, Defendant Farra Foxdog, Roe Corporations 1-

10, John Does 11-20, have committed one or more acts of theft of trade secrets as defined in N.R.S. 600A.035.

31.    At the time Defendant R&R Partners and Defendant Farra Foxdog misappropriated the trade secrets of Levy Production Group, Defendant R&R Partners, Defendant Farra Foxdog, Defendant Roe Corporations 1-10, and Defendant John Does 11-20 knew or had reason to believe that their actions would injure Levy Production Group.

32.    The acts and/or omissions of Defendant R&R Partners, Defendant Farra Foxdog, Defendant Roe Corporations 1-10, and Defendant John Does 11-20 were willful, wanton, malicious, and/or in reckless disregard of the rights of Levy Production Group, as Owner of the trade secrets.

33.    As the direct and proximate result of the Misappropriation of Trade Secrets by Defendant R&R Partners, Defendant Farra Foxdog, Defendant Roe Corporations 1-10, and Defendant John Does 11-20, Levy Production Group has sustained actual economic loss in an amount that continues to increase and in an amount that will be proved at the trial of this case.

34.    As the direct and proximate result of the willful and wanton conduct of Defendant R&R Partners, Defendant Farra Foxdog, Defendant Roe Corporations 1-10, and Defendant John Does 11-20, in disregard of the rights of Levy Production Group as owner of the trade secrets, Levy Production Group is entitled to an award of exemplary and punitive damages.

35.    As the direct and proximate result of the willful and malicious conduct of Defendant R&R Partners, Defendant Farra Foxdog, Defendant Roe Corporations 1-10, and Defendant John Does 11-20, Levy Production Group is entitled to an award of reasonable attorney's fees in addition to special, general, exemplary, and punitive damages.

<u>SECOND CLAIM FOR RELIEF: CONVERSION OF INTELLECTUAL PROPERTY</u>

36.    Levy Production Group realleges the allegations contained in the preceding paragraphs the same as if set forth herein in full.

37.    The "What's Up Vegas/Only Vegas" series is the personal intellectual property of Levy Production Group.

38.    By their acts and/or omissions as described above, Defendant R&R Partners, Defendant Farra Foxdog, Defendant Roe Corporations 1-10, and Defendant John Does 11-20 have wrongfully exerted dominion over the personal property of Levy Production Group in denial of and inconsistent with the rights of Levy Production Group and in derogation of Levy Production Group's rights in its personal property.

39.    As the direct and proximate result of these acts and/or omissions by Defendant R&R Partners, Defendant Farra Foxdog, Defendant Roe Corporations 1-10, and Defendant John Does 11-20, Levy Production Group has sustained actual economic loss in an amount that continues to increase and in an amount that will be proved at the trial of this case.

40.    As the direct and proximate result of the willful and wanton conduct of Defendant R&R Partners, Defendant Farra Foxdog, Defendant Roe Corporations 1-10, and Defendant John Does 11-20, in disregard of the rights of Levy Production Group as owner of its personal intellectual property, Levy Production Group is also entitled to an award of exemplary and punitive damages.

<u>THIRD CLAIM FOR RELIEF: UNJUST ENRICHMENT</u>

41.    Levy Production Group realleges the allegations contained in the preceding paragraphs the same as if set forth herein in full.

42.    By their acts and/or omissions, Defendant R&R Partners, Defendant Farra Foxdog, Defendant Roe Corporations 1-10, and Defendant John Does 11-20 have obtained both economic and non-economic benefits from their uses of The Series, which is the valuable intellectual property of Levy Production Group.

43.    By their acts and/or omissions, Defendant R&R Partners, Defendant Farra Foxdog, Defendant Roe Corporations 1-10, and Defendant John Does 11-20 have retained both the economic and non-economic benefits that they wrongfully obtained through uses of The Series, which is the valuable intellectual property of Levy Production Group.

44.    Under the circumstances described above, Defendant R&R Partners, Defendant Farra Foxdog, Defendant Roe Corporations 1-10, and Defendant John Does 11-20 are unjustly enriched, and it has been and will be inequitable for Defendant R&R Partners, Defendant Farra

Foxdog, Defendant Roe Corporations 1-10, and Defendant John Does 11-20 to be permitted retain the benefits wrongfully obtained from their uses of The Series.

45.    All economic benefits obtained by Defendant R&R Partners, Defendant Farra Foxdog, Defendant Roe Corporations 1-10, and Defendant John Does 11-20 as a result of their uses of The Show should be disgorged and turned over to Levy Production Group.

<u>FOURTH CLAIM FOR RELIEF: BREACH OF CONTRACT</u>

46.    Levy Production Group realleges the allegations contained in the preceding paragraphs the same as if set forth herein in full.

47.    The Mutual Non-Disclosure Agreement by and between Levy Production Group and Defendant R&R Partners is a contract.

48.    The Mutual Non-Disclosure Agreement precluded Defendant R&R Partners from disclosing or making use of Confidential Information disclosed by Levy Production Group concerning the "What's Up Vegas/Only" television show.

49.    On information and belief, Levy Production Group alleges that the information upon which "Vegas On" was produced by Defendant Farra Foxdog was Confidential Information provided to Defendant R&R Partners by Levy Production Group that was subject to the terms of the Mutual Non-Disclosure Agreement.

50.    By its acts and/or omissions in disclosing and using Confidential Information, Defendant R&R Partners has breached the Mutual Non-Disclosure contract.

51.    As the direct and foreseeable consequence of Defendant R&R Partners' breach of contract, Levy Production Group has sustained actual economic loss in an amount that continues to increase and in an amount that will be proved at the trial of this case.

52.    As the direct and proximate result of the willful and wanton conduct of Defendant R&R Partners, Defendant Farra Foxdog, Defendant Roe Corporations 1-10, and Defendant John Does 11-20, in disregard of the rights of Levy Production Group as owner of its personal intellectual property, Levy Production Group is also entitled to an award of exemplary and punitive damages.

1    **WHEREFORE,** Levy Production Group respectfully prays that the Court enter judgment

2    in its favor and against each and all of the defendants, jointly and severally, for all compensatory,

3    exemplary, and punitive damages as shall be proved at the trial  of this case, together with such

4    attorney's fees and costs of suit as permitted by law.

5         Respectfully submitted this 25th day of June, 2022.

6

7                                          /s/ Bradley L. Booke
                                           Bradley L. Booke #2662
8                                          10161 Park Run Drive #150
                                           Las Vegas, Nevada 89145
9                                          702-241-1631
                                           866-297-4863 Fax
10                                         brad.booke@lawbooke.com
                                           Attorney for Levy Production Group
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-9-

<u>DEMAND FOR JURY TRIAL</u>

Plaintiff Levy Production Group, LLC, respectfully demands a trial by jury of all issues so triable.

Respectfully submitted this 25th day of June, 2022.

<u>/s/ Bradley L. Booke</u>
Bradley L. Booke #2662
10161 Park Run Drive #150
Las Vegas, Nevada 89145
702-241-1631
866-297-4863 Fax
brad.booke@lawbooke.com
Attorney for Levy Production Group

-10-

# EXHIBIT 1



# Working Show Title: "What's Up Vegas"

**Logline:**
An entertainment magazine style show recapping highlights of what's happened in Las Vegas the previous week, promoting what's upcoming in Vegas, and giving viewers behind-the-scenes exclusive Vegas content.



# Synopsis

Every major entertainment news show in the world is covering what happens in Vegas…in small doses.
But our city now has SO much to offer visitors on a consistent basis, that it deserves its own entertainment news show.

***What's Up Vegas - A show dedicated to all-access, all Vegas news, distributed to a global audience***

From celebrity activity to sporting events to newly opened restaurants, clubs, bars, attractions, and everything in between, this weekly web series will tell viewers everything they need to know to stay up to date on what's happening in the most interesting city in the world.

It will also give viewers unparalleled access to exclusive, behind-the-scenes content of how the magic of Las Vegas really happens, creating an added layer of interest that viewers can't get anywhere else.









# Format

"What's Up Vegas"  will be a weekly video series for digital distribution on a dedicated LVCVA website or streaming platform such as Facebook Watch or Youtube.

The length of each show is TBD but we are recommending 10-15 minute shows be digitally released each week, with the opportunity to break individual segments out of the full show for stand-alone use & distribution on social.

   

Ditching the traditional host-driven news show where all the focus is on the actor or actress, our show will instead be driven by a high-energy voiceover talent and soundbites from interviews we capture at each location shoot. This program model ensures that the main star of the show is the city of Las Vegas and all the people who live, work, play and visit. This also eliminates costs traditionally associated with host-driven shows including talent fees, makeup, hair, wardrobe etc.

  

# Each episode will contain three kinds of segments:

1. What was up in Vegas last week
2. What's Up in Vegas in the coming weeks
3. A What's Up Vegas Exclusive







# What Was Up in Vegas Last Week

**A timely entertainment news package that recaps what has happened in Vegas in the past week.**
This will be a mix of interviews and footage that our crews have captured as well as video and photo news handouts.

A few examples of what this could include:
- Highlights of the Billboard Music Awards Show and Red Carpet
- Kim Kardashian celebrated her birthday at Hakkasan Nightclub
- Bobby Flay opened a new Las Vegas restaurant at Palms
- Highlights from the NBA Summer League tournament





  

# What's Up in Vegas in the Coming Weeks

**A timely entertainment news package that promotes what will be happening in Vegas in the upcoming month.**
This will be a mix of interviews and footage that our crews have captured as well as video and photo news handouts.

A few examples of what this could include:
- Which celebrities will be hosting upcoming pool club parties
- How you can score tickets when Jimmy Kimmel brings his show to Las Vegas
- What is Vegas Uncorked and which chefs will be in attendance
- Why you should check out Nascar weekend in Vegas











# A What's Up Vegas Exclusive

**Evergreen behind-the-scenes packages that showcase Las Vegas hotels, restaurants, clubs, shows, and attractions that are ongoing.**
100% of the content will be captured by our crews and exclusive to our show.
These packages will be a great opportunity for sponsorship.

A few examples of what this could include:
- An exclusive look behind-the-scenes of Cirque de Soleil's Show 'O'
- An exclusive look at how the Shark Reef at Mandalay Bay is maintained
- An exclusive interview with celebrity chef Guy Fieri at his restaurant
- An exclusive tour of the UFC training facility









# Vegas.com vs. WhatsUpVegas.com

## Bringing Vegas Stories to Life with Video

People searching for Vegas info find themselves on a site like Vegas.com with nothing but static photos and booking offers.

WhatsUpVegas.com will be the first site delivering Vegas information to viewers through the medium of engaging video.
This fully immersive platform will become an experiential site that visitors enjoy returning to on a regular basis to keep up with what is happening in Vegas, not just when they plan their yearly trip, but all year long.





# Levy Online – Digital Marketing

**Reaching Users Outside the Las Vegas Market Who Are Interested in Visiting Las Vegas by Understanding:**

- What buying phase the user is in (research and planning vs committed booking)
- What content they're currently looking at (news vs. vegas attractions)
- Demographic Information - Income, Age, Education, Family Size, Etc
- Device (mobile is higher reach, desktop is higher purchase propensity)
- Predictive technology (how they fit into known cohort models)
- Propensity to convert - i.e. interact with our content (based on machine-learning algorithms)

**Engaging & Re-Engaging Users Who Are In Las Vegas**

- Capitalize on those who were reached outside of the market while travel-planning. These individuals have brand awareness and trust, having received our messaging first.
- GPS targeting in real-time, accurate to within 5-10 meters
- Ads can be placed for individuals currently in specific hotels, at the airport, at stadiums and other venues, convention visitors and other areas with high concentrations of visitors.
- Targeting segmentation allows us to prioritize users based on behavior and cohorts
- Remarket based on category of video/content they engaged with

**Leveraging Social Media Platforms to Grow the Brand**

- Featured hotels, restaurants and attractions will promote their segments on their own pages driving traffic to our site
- Exclusive content will get picked up by other news site to generate additional attention
- Episodes and segments that are shared organically can create viral buzz

  

# Levy Production Group

**The Leading Las Vegas Production Company**

- Over 30 years experience in Las Vegas
- Award-winning creative team of experts in all aspects of production & post
- 14,000 sf state-of-the-art local production facility
- Strongly connected to local tourism/entertainment industry
- Crews & equipment available 24/7, 365 days a year
- Demonstrated history of executing broadcast projects on time and on budget









# Jacquie Gray

**LPG Senior Producer/Writer**

- 10 years experience producing & writing for LPG
- 8 years of field producing for E! News in Vegas
- Produced & wrote two Emmy Award-Winning Las Vegas shows
- Born and raised in Vegas with strong ties to local community
- Passion for entertainment & celebrity news







# Everyone is asking... What's Up Vegas

All-access, all Vegas news stories and exclusive content,
delivered on a weekly basis for a global audience,
with valuable opportunities for sponsorship and advertising.



  

# EXHIBIT 2



# Only Vegas - Concept Overview

**Logline:** An entertainment-magazine style show giving viewers an exclusive look at everything that makes Las Vegas the most unique destination in the world, while also getting them excited for what "Only Vegas" experiences await them when our city reopens.

**Synopsis:** After an unprecedented global pandemic and quarantine, people are eager to return to life's many joyous experiences. And no one does joyous experiences quite like Las Vegas. From mind-blowing restaurants to shows, shopping, gambling, bars, sports and attractions, there are so many incredible things offered here that are uniquely Vegas. "Only Vegas" will be a positive entertainment show dedicated to all-access, all Vegas content that will entice a global audience to plan a visit and seek out the joy that our city has to offer.

Now more than ever, our city needs to pull out all the stops to let the world know that we are here, we will be open for business soon, and when the time comes, we can offer visitors a safe, fun and incredibly unique vacation experience that they cannot get anywhere else in the world. "Only Vegas" will be a key part of the LVCVA's marketing toolbox as they work to reinvigorate the Las Vegas tourism industry.

  

# Only Vegas - Format

Levy Production Group is open to producing this show in whatever format the client ultimately feels best suits their needs.

However, our recommendation is a weekly 15-minute TV show produced for wide digital distribution. Each 15-minute episode would be composed of approximately 5 to 7 self-contained segments that can also be broken out as individual content pieces and posted separately on digital platforms. The 5 to 7 individual segments would be woven together in each 15-minute episode by either a recurring host, guests hosts that rotate for each episode, or a voiceover. The role of the host(s) would be to intro each show, maybe give a few Vegas updates, toss to each individual segment package, provide some Las Vegas fun facts interspersed between packages, encourage viewers to connect to the Only Vegas social channels, and wrap up the show at the end. Here's a breakdown of these three host options:

a.   A local Las Vegas personality who serves as an ongoing show host. We would shoot their opens, closes, and interstitial segments from either a safe empty location on the Las Vegas Strip or in the LPG chromakey studio, and composite over a stylized Las Vegas backdrop.

b.   A variety of different local Las Vegas personalities who take turns "guest hosting" each individual episode similar to what SNL does with their guest hosts for each episode. Again these clips would all be shot either on location with a practical Las Vegas back drop OR in the studio with a chromakey background.

c.    In lieu of a physical host to tie the segments together, we could instead use a voiceover talent to intro upcoming segments and cover the voiceover sections with relevant b-roll, graphics and animation.

  

# Only Vegas - Show Host Example

LPG works with many local Las Vegas talent and could suggest a variety of talent options for either a recurring host role or guest host roles, should the client want to go in that direction.

One example of a host that would work well for this style show is our friend Jeff Civillico, a former Las Vegas headliner on the Strip for many years, who currently does TV and corporate hosting.



https://www.jeffcivillico.com

We could provide you with a list of other talent options that we have relationships with if you're interested.
This is just one example for now so you could see what kind of host we think would work well for this kind of show.





# Only Vegas - Show Content

As previously stated, each episode would be comprised of 5 to 7 individual segments that could also be broken out of the larger show and posted as stand-alone videos. The content of these segments would be comprised of a variety of different topics in each episode to make sure each episode is dynamic and interesting end to end.

The following slides will outline some ideas for different kinds of segments that we've broken down into the following categories:

- Food/Drink Segments
- Entertainment Segments
- Sports Segments
- What's New Segments
- Ask Vegas Segments
- Vegas History Segments
- Vegas Cares Segments

All content has been outlined based on what we think is possible to shoot in May/June 2020 while all of Vegas is likely still shut down or slowly re-opening, with an emphasis on content shot at people's homes and/or empty venues throughout the city. Once the Strip, Downtown, and other local resorts begin to reopen, we can shift content production to be focused on what's open.

  

# Only Vegas - Show Content: Food/Drink Segments

The purpose of these segments is to highlight all the incredible food and beverage options available only in Las Vegas. These segments will feature a variety of celebrity chefs, pastry artists and expert mixologists as they show viewers how they make some of their signatures dishes and drinks. Depending upon what is available to us before resorts reopen, most of these segments will likely be shot in the chef or bartender's homes. As we get closer to re-openings we may be able to shoot some of these segments in the empty kitchens/bars themselves. Here are **just a few examples** of what these segments might include:

- World-renowned celebrity chef Gordon Ramsay shows viewers how to make his signature beef wellington dish and shares some fun anecdotes of opening his iconic Hell's Kitchen restaurant on the Las Vegas Strip and what it's like for the chefs who work in the restaurant. We can include previously shot footage of the restaurant.
- Famous pastry chef Amaury Guichon from the Aria will share his secrets to the perfect chocolate chip cookies that viewers can try at home, while talking about what has inspired some of his incredible chocolate sculptures and signature pastry creations that you can see next time you're in Vegas. We can show pictures and videos of these sweets.
- Master mixologist Mariena Mercer from the Cosmo gives a cocktail class on how to whip up some of her favorite at-home cocktail creations and talks about her most memorable experiences as a lifelong bartender/mixologist in Las Vegas.








# Only Vegas - Show Content: Entertainment Segments

The purpose of these segments is to highlight all the unique entertainment opportunities available only in Las Vegas. These segments will feature a variety of Las Vegas performers from resident music artists to dancers, acrobats and magicians. Depending upon what is available to us before resorts officially re-open, some of these segments might need to be shot at the performers' homes. As we get closer to re-openings we may be able to shoot some of these segments in the empty theaters, stages, venues. Here are **just a few examples** of what these segments might include:

- Resident musical artist Shania Twain gives an intimate performance of one of her songs, talks about what she loves most about her Las Vegas residency, and shares what makes the live music experience in Las Vegas so unique.
- America's Got Talent Winner and Las Vegas headliner Shin Lim entertains guests with a short performance of some of his slight-of-hand magic, and then teaches viewers how to do a simple card trick that they can work on at home.
- Hand balance acrobat Dima Shine who has starred in Cirque's Zumanity and is currently featured in Celesita at the Strat shows off some of his unbelievable hand-balance moves and gives viewers some at-home conditioning workouts they can do to increase flexibility and work toward holding a basic handstand.

  

  

# Only Vegas - Show Content: Sports Segments

These segments will highlight all things athletics in Las Vegas, including our professional teams, athletes, and cheerleaders, as well as non-traditional sports like e-gaming and NASCAR, and even sports handicapping and betting.

Here are **just a few examples** of what these segments might include:

- A local UFC fighter shows viewers his home gym and shares some of his favorite home workouts. He talks about his favorite Las Vegas fight memories and what fights he looks forward to watching when UFC starts up again. If the empty UFC gym is available to shoot in maybe he can give viewers a tour of the empty gym and talk about how they train there.

- A behind-the-scenes look at the process of selecting the first ever Las Vegas Raiderettes team as they hold virtual tryouts. Some veteran Raiderettes can talk about what it's like to be an NFL cheerleader and how excited they are to be moving to Vegas. They can teach an easy at-home cheer for viewers to learn.

- Two Vegas Golden Knights hockey players face off in street hockey trick shot competition, each playing from the safety of their own homes or maybe even in an empty Toshiba Plaza outside the arena. We can set up some Vegas-themed obstacles for them to stick handle through and then have them show off their best trick shots into the net.

- Local Las Vegas Pro Golfer Kevin Na gives viewers some tips on how to improve their swing. And since Las Vegas golf courses will likely be in the first wave of things to reopen, we can also get a representative from a local course to talk about the safety measures they're putting in place to make golf a safe activity for visitors this summer.









# Only Vegas - Show Content: What's New Segments

There are so many exciting new projects under construction or renovation currently in Las Vegas. These "What's New" segments will highlight some of the new projects and what viewers can look forward to experiencing in the coming months and years ahead in Las Vegas as it expands and changes. This kind of forward-thinking content reinforces to viewers that Las Vegas will continue to reinvent itself and maintain its status as a world-class destination.

Here are **just a few examples** of what these segments might include:

- A sneak peek of the new Virgin Hotel (formerly Hard Rock) that's being renovated and set to open this fall. Interview with an executive or project manager to share a few details of what visitors can expect from the new resort.

- An tour of the MSG sphere construction site (once construction resumes), including an interview with one of the executives or project leads who can explain how the sphere will be the most technologically advanced venue ever built.

- A hard-hat tour of Circa, what is sure to be the hottest new resort in Downtown Vegas, set to open in December 2020. Along with the tour, viewers will hear from an executive who can tell us what unique features will make Circa so exciting.









# Only Vegas - Show Content: "Ask Vegas" Segments

These short segments could be a great way to encourage view to interact directly on social platforms with our Only Vegas show brand. Viewers can submit question either written or recorded as short video clips using a designated hashtag like #AskOnlyVegas. We will encourage viewers to Ask Vegas their burning questions about they city and all its magic. We will select the most interesting questions that would make for good segments and find the right people to answer their questions. For the first couple episodes we will have to create our own questions to get the ball rolling. If no good questions are submitted after that, we can continue to just create our own questions to provide some interesting insight into different Vegas attractions. There could also be some kind of sponsored prize or reward attached to this if a viewer's question is chosen to be answered. Here are **just a few examples** of what these segments might include:

- "How much pressure is required to run the Bellagio Fountain shows?" - To answer we can shoot a fountain tech in their operations room talking about the mechanics of the show. Integrating b-roll from the fountain show.
- "Who takes care of all the sharks at the Mandalay Bay Shark Reef?" - To answer we can shoot some behind-the-scenes footage with a diver as they go into the reef to feed the sharks and clean the tank.
- "How many bulbs are in the Fremont Street Experience?" - To answer we can interview a sign tech as he explains what it takes to program the world's largest LED screen with millions of LED lights.









# Only Vegas - Show Content: Vegas History Segments

People have long been fascinated by the history of our city. From tales of mobsters to building implosions, the history of Las Vegas is just as unique as the city itself. It might be fun to sprinkle in a few short segments that tell some fascinating bits of Las Vegas history utilizing archival footage and new interviews. This content is easy to produce as filler during this difficult time of city-wide closures. Plus, going into the vault and looking back on some of the most iconic Las Vegas moments in history will remind viewers how long our resilient city has been there for them and their families as a fun vacation destination.

These short historical segments could include things like:
- The story of the first iconic neon signs and where they all live now at the Neon Boneyard
- Stories from the Las Vegas Mob Museum with an interview in the museum promoting it as a fun attraction
- Frank Sinatra and the Rat Pack stories - where they played, where they stayed, what they did etc.
- Stories of Elvis and how our city continues to pay homage to him in many ways like Elvis-themed chapels
- The evolution of the showgirl, from glamorous Folies dancers to the modern VGK showgirl mascots
- Hotel Implosions- archival footage and the stories of why they were imploded









# Only Vegas - Show Content: "Vegas Cares" Segments

Now more than ever, people are desperate to hear feel-good positive news stories of how communities and individuals are stepping up to make a difference for others in the global pandemic as well as everyday life. Las Vegas has no shortage of these feel-good stories to share, whether it's our resorts cooking thousands of meals for local non-profit shelters, donating goods to foodbanks, lighting up hotel rooms to display messages of hope, or even the ongoing sustainability programs. We can also feature some individuals who are utilizing their unique Vegas skills to give back like costume designers who are sewing masks for front-line workers, etc.

These can be very short and sweet packages that show viewers what great things our city is doing to help those in need at this difficult time. It's a good way to build positive PR for the city, the tourism industry, and our local workers who are giving back.








# Digital Distribution Strategy

Each episode and all accompanying segment cut-downs will be uploaded weekly to dedicated channels on various digital distribution platforms including but not limited to:

- Youtube
- Facebook Watch
- IGTV
- Twitter
- Roku
- Amazon Prime
- Hulu
- The LVCVA website

We will also work with our contacts at the two leading distribution agencies, WME and CAA, to see if this can be licensed and distributed to additional streaming services like Netflix, Apple TV, Quibi, etc. Arranging distribution deals may take some time so we will look to do this for the episodes that are produced in the next fiscal year starting in July.

For more information on our digital marketing team's comprehensive strategy to promote the show and segments on various platforms, please take a look at their separate pitch deck attached in the email.





# Levy Production Group

**The Leading Las Vegas Production Company**

- Over 32 years experience in Las Vegas
- Award-winning creative team of experts in all aspects of production & post
- 14,000 sf state-of-the-art local production facility, all resources under one roof
- Strongly connected to local tourism/entertainment industry
- Crews & equipment available 24/7, 365 days a year
- Demonstrated history of executing broadcast projects on time and on budget
- Client list includes hundreds of broadcast networks, global corporations, national brands, local businesses, and worldwide creative agencies



# Jacquie Gray

## Levy Production Group Senior Producer/Director/Writer

- 10 years experience producing, directing, writing for LPG
- 8 years of field producing for E! News in Vegas
- Produced & wrote two Emmy Award-Winning Las Vegas shows
- Born and raised in Vegas with strong ties to local community and industry
- Passion for telling the stories of Las Vegas











# Jacquie Gray: Work Samples

Below is a selection of some of the hundreds of projects that Jacquie has produced and directed at LPG:

- Episode 1 of a 10 episode Emmy Award-Winning documentary series "Behind the Vegas Ice": https://vimeo.com/240534883/b44c07d56d
- MGM Resorts Announce Raiders Partnership: https://www.facebook.com/MGMGrand/videos/807154043116621/
- Golden Knights and Allegiant Trade Places Feature: https://youtu.be/mndMTv3QfyY
- A Day in the Life of Brett Eldredge in Vegas for Rolling Stones Country: https://youtu.be/kse7uWhy5AI
- The Colosseum Remodel: https://youtu.be/J2wPY2HZ8vA
- Raiders Announce Partnership with Coca Cola: https://www.raiders.com/video/reyes-coca-cola-partners-with-the-raiders-and-allegiant-stadium
- Raiders Stadium Topping Out Ceremony: https://www.raiders.com/video/topping-out-ceremony-at-allegiant-stadium
- SLS Hotel in the Las Vegas Community: https://youtu.be/Bo8itDfXC4U
- Legends in Concert Commercial: https://youtu.be/LWYYcUoG4vc
- Las Vegas Aviators Hype Video: https://youtu.be/yKl2s5pINoY
- Bonnie Springs Ranch Feature for "Heart of Vegas" TV show: https://vimeo.com/412410301/e7b54363ca
- Opportunity Village Feature for "Heart of Vegas" TV show: https://youtu.be/vCcd5kySa7Q





# Kurt Rauf

Levy Production Group Director/DP with 25+ years of experience



# Kurt Rauf: Work Samples

Below is a selection of some of the many projects that Kurt has directed for Levy Production Group:

- Gordon Ramsay Steak Feature: https://vimeo.com/412423049/a820b1af54
- LINQ Pool Commercial: https://youtu.be/R9FM1j3Zw50
- Paris Las Vegas Commercial: https://youtu.be/Qg3RijBL1t4
- Magic Mike Live Commercial: https://youtu.be/qFW3OW3YO94
- Nobu Villa Sizzle Reel: https://youtu.be/KzoP1RGg-IY
- Caesars Celebrity Chefs: https://youtu.be/A9P0Kyy8XtU
- Celine Dion Tribute Video: https://youtu.be/lagW0a74tks
- LINQ Commercial: https://youtu.be/UBbFXLlI6Bk
- Buca Di Beppo Commercial: https://youtu.be/5-Rm8Eqet_Q
- Las Vegas Monorail Commercial: https://youtu.be/Vieo_J92uQ8
- Highroller Commercial: https://youtu.be/684IiNyV47M
- Paris Le Central Bar: https://vimeo.com/412436537/d82c420751
- Raos Homemade Chicken Parm: https://vimeo.com/412427277/a2ff7d316a





# Jeff Lester
## Levy Production Group Director/Producer with 25+ years of experience



# Jeff Lester: Work Samples

Below is a selection of some of the many projects that Jeff has directed for Levy Production Group:

- Caesars Bacchanal Buffet Anniversary Celebration Video: https://youtu.be/_TUuBVeI8Ho
- Nobu Hotel Travels to NYC Fashion Week: https://youtu.be/41tbGUfsQGk
- Palazzo Marketing Video: https://youtu.be/h9LEZRYrOjk
- Smith Center Grand Opening "And So It Begins" Video: https://youtu.be/3-Q4rcyK2r8
- Matt Franco Residency Commercial: https://youtu.be/UUFdWD0e_RA
- Cantor Gaming "Game Changer" Commercial: https://youtu.be/59sp2w6L9Wc
- Cantor Gaming "Sportsbook" Commercial: https://youtu.be/MMrkjgdVM-s
- Peepshow Commercial: https://vimeo.com/412414606/ea2a191062





# Why Levy Production Group?

Simply put - We are confident that there is <u>**no other production company that has**</u>:

- **As much experience** shooting in the hospitality industry in Las Vegas
- **As many connections** with local Las Vegas resorts, talent, sports teams, business leaders
- **As deep a passion** for this community and the revitalization of its tourism industry

We think it's also worth noting that Levy Production Group is proud to work with **100% local Las Vegas production crew personnel.** The impact this pandemic and subsequent closures have had on our local industry is immeasurable. It would be incredible for this show to be not just a show promoting the resurgence of Las Vegas, but one actually aiding in those efforts. A show about Las Vegas, produced BY Las Vegans, **putting local production crews back to work** at a time when our city needs it most. Using local crew also eliminates the need for any crew to travel from LA or beyond, book hotel accommodations, rent cars and gear etc. With our studio located here in Las Vegas, we have 24/7 access to local production resources, gear, equipment, and a large chromakey studio. We also have 6 high-end editing suites in our facility that are large enough to accommodate clients sitting in on the edits on our couches from a safe distance away from the editor's work stations should anyone from R&R or LVCVA's teams desire to do so.





**We look forward to the opportunity to furthering this discussion with your creative team!**

For more information on Levy Production Group
Website: LevyProductionGroup.com
Youtube Channel: youtube.com/levyproductiongroup
Virtual Facility Tour: https://youtu.be/UW3QGKq40qc


Contact Info

Mike Levy - Owner
mike@levyproductiongroup.com
Cell: 702-497-8511

Jacquie Gray - Senior Producer/Writer/Director
jacquie@levyproductiongroup.com
Cell: 702-335-7813







EXHIBIT 3

ONLY VEGAS TV

DIGITAL DISTRIBUTION ADVERTISING SUPPORT

Who are we? We are a strong marketing team with diverse digital advertising skills.

- Thousands of accounts serviced

- Tens of thousands of digital campaigns built

- All staff has years of expertise in this field

- Millions of dollars in digital marketing budgets effectively managed

- All digital advertising covered; video production and traditional media buying

We will be your strategic marketing partner, not just a service provider.
Our digital team operates as an extension of your marketing department.



# Only Vegas TV | Digital Advertising

1. The User Experience

2. Ads They See

3. Where Ads Serve

4. Who We Target

5. Brand Safety

6. What We Track

7. Leveraging Existing Resources

8. Budget



# The User Experience

Using a Marketing Website as Content Hub
- User sees ad
- Goes to show site, options for where to view
- User views more material on the platform of their choice



No-Website Alternate Strategy - Ads take users directly to content platforms



# Example Creative Capabilities













# Example Creative








# Where Ads Serve

Types of Content
- Pages about Vegas
- Websites about Vegas
- Videos about Vegas and artists we promote
- Travel websites and travel guide content
- Any available ad unit when the person is the right fit for targeting (examples to follow)
  - This includes in-app, OTT/Connected TV, in-stream video, native video, native, streaming audio and others



www.vegasunzipped.com

lasvegasthenandnow.com

vegas.eater.com

yourusacityguide.com

seeingvegas.com

www.globotreks.com

www.whentobewhere.com

www.creativetravelguide.com

www.vegas.com

www.lasvegasadvisor.com



# Where Ads Serve | Example

Hulu's Expanded Inventory
- Hulu and Hulu Plus
- Hulu.com
- The Hulu App
- Hulu on Amazon Fire TV and Apple TV
- Hulu if played via Chromecast to TV
- Hulu on Samsung, LG, Echo Show and other smart devices
- Hulu streamed on XBOX, PlayStation, Nintendo Switch

Inventory does not require an advertising contract with Hulu.

Levy Online has negotiated rates in place for inventory. Even when placing with Hulu, we're still targeting our own audiences of specific targets - *not just anyone watching Hulu.*



# Where Ads Serve

All devices and people within a household can be targeted, including Connected TV devices and streaming apps.

This includes individuals who may not be exposed to advertising via traditional means, such as cord-cutters who watch streaming apps instead of cable.

**Almost all ad space on the internet is available to us. If there's an ad unit, we can place into it now or negotiate the rate to make it available.**

Note: We target people, not ad space. The ad space is just the means to an end.



     

# Who We Target

- People who are looking at content about Vegas right now
- People who have recently looked at Vegas content, or expressed interested in Vegas flights, hotels, casinos, entertainment, etc.
- People who habitually visit Las Vegas, based on their phone's location information
- People who likely cancelled a Vegas Trip
- People who have similar demographics and behavior to the above (lookalike)





# Who We Target | Examples

- Households who are likely to have visited Vegas.com recently
- 4MM Impressions - mostly video



- People who are currently looking at Las Vegas articles, news, and other content; real-time targeting
- 160MM Impressions - banner, native





Impression estimates based on May 1 - June 30 flight using average achieved rates from existing Levy Online internal and 3rd party data

# Who We Target | Examples

- People and households who recently looked at content related to Las Vegas
- 250MM Impressions - video, banner, native
- High volume and long-term value audience



- People who likely had Vegas travel plans but cancelled, based on flight and hotel booking data
- 25MM Impressions - video, banner, native
- Higher frequency desirable given specificity of target audience



Impression estimates based on May 1 - June 30 flight using average achieved rates from existing Levy Online internal and 3rd party data



# Who We Target | Video Re-Engagement

- Directly target people who viewed previous episodes of Only Vegas
  - People who viewed episodes online
  - People who viewed a partial episode, clip or teaser as an ad
- This allows additional frequency for highly-engaged people, and keeps their interest levels high
- People targeted based on prior video engagement can be served banner or native ads as follow-up re-engagement, such as when a new episode is available. This capitalizes on existing earned audiences and increases viewership
- Deliver of banner or native follow-up advertising encourages cross-channel reiteration of brand messaging, and shifts ad dollars to lower cost inventory (banner vs video is much lower CPM). This allows the budget to go further, increasing overall reach



# Social Awareness and Following

Regular organic posting on social media
- Contest and giveaways tied to the show
- Users can answer a question & provide contact info based on each episode and be entered into a giveaway

Example prizes:
- Hotel/Entertainment packages
- Free show tickets
- Prizes can be customized based on episode content

Benefits:
- Remarket to engaged users for the new episodes.
- Create lookalike modeling of engaged users
- Organic shares and reach





# Brand Safety & Viewability

Levy Online ensures safe serving, meaning ads are placed in not just the most relevant placements, but ones that positively reflect on your brand.

- Brand Safety validation from multiple 3rd party services prevents serving on inappropriate content

- Anti-fraud filtering prevents serving to low-quality users, test environments, parked domains and bots

- Viewability filters ensure ads served are actually viewable, not just present on the page











# What We Track

- Video Views
  - Deliver episode or segment views at massive scale, efficiently

- Viewability (banner/native)
  - Ensure ads are seen by the targeted audience

- People searching for Only Vegas and visiting
  - If using marketing website, quantify the people who searched for "Only Vegas" after viewing an ad and visited the site

- People clicking out to consume more content
  - If using a marketing website, quantify the people who clicked out to various media channels in order to view more

- Social engagement and growth



# Leverage Existing Resources | Social Fans and Followers

Current LVCVA Assets:
- Facebook - 2,9MM Followers
- Twitter - 464K Followers
- Instagram - 724K  Followers
- YouTube - 48.9K Subscribers
- Site Visitors estimated at over 330K per month

Benefit:
- Start with engaged audience and high-value viewers
- Content is on a social platform encouraging sharing, discussion, and real-time feedback
- Engagement from existing fans increases earned reach - marketing dollars go further
- Keeping users in their viewing context benefits user experience, keeping your audience focused and engaged with you based on where they are
    - Ex: YouTube users including existing subscribers will most likely engage with you on YouTube vs. Facebook or Twitter

**LEVY**online
A DIGITAL AGENCY

# Proposed Budget-Subject to change

| Channel | Description | Budget |
|---|---|---|
| Social Prospecting | Engage people across Social media | $200,000 |
| Display Prospecting - Contextual | Engage people looking at Las Vegas content | $150,000 |
| Display Prospecting - Video, Banner, Native | Engage people in market for Vegas travel, AI predictive targeting for people who travel to Vegas or are likely to travel soon | $400,000 |
| Remarketing | Re-engage users across various platforms | $75,000 |
| Organic Social Content and creation | Generate Organic reach through posts and content creation | $25,000 |
| Contest and Giveaways creation* | Collect customer data to remarket and build lookalike audiences | $10,000 |
| Display Re-Engagement | Increase views by targeting people who already viewed an episode or who have already viewed a video ad | $50,000 |
| | | $910,000 |
| Agency Fee | | $140,000 |

*Prizes not included



## View Document - A-22-854618-B - Proof of Service - PSER CIV

Pages: 1

PSER
BRADLEY BOOKE
PO BOX 13160
JACKSON, WY 83002
(702) 241-1631

Electronically Filed
7/7/2022 3:03 PM
Steven D. Grierson
CLERK OF THE COURT



### DISTRICT COURT
### CLARK COUNTY, NEVADA

LEVY PRODUCTION GROUP, LLC
    Plaintiff

vs

R&R PARTNERS, INC., ET AL.
    Defendant

*Case Number:* A-22-854618-C

*Dept:*

**PROOF OF SERVICE**

TYLER TREWET, deposes and says: that at all times herein I am a citizen of the United States, over 18 years of age, licensed to serve civil process in the State of Nevada under license #389, and not a party to nor interested in the proceeding in which this statement is made.

Legal Wings, Inc. received on Monday, June 27, 2022 a copy of the:
**SUMMONS; COMPLAINT AND JURY DEMAND**

I served the same on **6/30/2022 at 2:16 PM** to:

**Defendant FARRA FOXDOG PRODUCTIONS, LLC, BY SERVING SILVER STATE LEGAL, REGISTERED AGENT**

by leaving the copies with or in the presence of **KEVIN PARKER**, **FRONT DESK**, at 4625 W NEVSO DR, STE 2 & 3, LAS VEGAS, NV 89103, pursuant to **NRS 14.020**.

Pursuant to NRS 53.045, I declare under penalty of perjury under the law of the State of Nevada that the forgoing is true and correct.

Executed: Tuesday, July 5, 2022

TYLER TREWET
Registered Work Card R-2019-04184

Legal Wings, Inc., 1118 Fremont Street, Las Vegas, NV 89101, (702) 384-0305, PILB #389

P-1966019.01

Case Number: A-22-854618-C

Pages: 1

Download Document

## View Document - A-22-854618-B - Proof of Service - PSER CIV

Pages: 1



**Electronically Filed**
7/11/2022 12:29 PM
Steven D. Grierson
CLERK OF THE COURT

**IN THE EIGHTH JUDICIAL DISTRICT COURT**
**IN AND FOR THE COUNTY OF CLARK**

Levy Production Group, LLC, a Nevada limited
liability company,

Plaintiff(s),                              CASE NO:  A-22-854618-C

VS.

R&R Partners, Inc., a Nevada corporation, et al.,

Defendant(s),

DECLARATION OF SERVICE

ss

**Samantha Curl**, being duly sworn says: That at all times herein Affiant was and is a citizen of the United States, over 18 years of age, and not a party to nor interested in the proceedings in which this Affidavit is made.

That Affiant received copy(ies) of the **Summons-Civil; Complaint and Jury Demand;** On 6/27/2022 and served the same on 7/8/2022 at 1:05 PM by delivery and leaving a copy with:

By then and there personally delivering a true and correct copy of the documents into the hands of and leaving with **Ashley damele** whose title is **Managing director.**

Served on behalf of **R&R Partners, Inc., a Nevada corporation**

Service Address: **6160 Plumas St Ste 200 , Reno, NV 89519-6057**

A description of Ashley damele is as follows

| Gender | Color of Skin/Race | Hair | Age | Height | Weight |
|--------|-------------------|------|-----|--------|--------|
| Female | Caucasian | Brown | 41 - 45 | 5'1 - 5'6 | 221-240 Lbs |

Pursuant to NRS 239B.030 this document does not contain the social security number of any person.

Affiant does hereby affirm under penalty of perjury under the law of the State of Nevada that the foregoing is true and correct.

STATE OF NEVADA
COUNTY OF CLARK

Executed on: 7/11/2022
by Samantha Curl
Registration: R-2022-02620

No notary is required per NRS 53.045

X _____

Samantha Curl
Registration: R-2022-02620
Reno Carson Messenger Service, Inc #211
185 Martin St.
Reno, NV 89509
(775) 322-2424
www.renocarson.com

*.R140074*

Order#: R140074 NVPRF411

Case Number: A-22-854618-C

Pages: 1

Download Document

Electronically Filed
7/28/2022 4:18 PM
Steven D. Grierson
CLERK OF THE COURT

**ANSC**
COLLEEN E. MCCARTY
Nevada Bar No. 13186
cmccarty@foxrothschild.com
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503

DAVID ARONOFF
Cal. Bar No. 125694 (pro hac vice forthcoming)
JOSHUA BORNSTEIN
Cal. Bar No. 311658 (pro hac vice forthcoming)
**FOX ROTHSCHILD LLP**
Constellation Place
10250 Constellation Blvd, Suite 900
Los Angeles, CA 90067
Telephone: (310) 598-4150
Facsimile: (310) 556-9828

*Attorneys for Defendant*
*R&R Partners, Inc.*

**EIGHTH JUDICIAL DISTRICT COURT**

**CLARK COUNTY, NEVADA**

| | |
|---|---|
| LEVY PRODUCTION GROUP, LLC, a Nevada limited liability company,<br><br>            Plaintiff,<br>    v.<br><br>R&R PARTNERS, INC., a Nevada corporation; FARRA FOXDOG PRODUCTIONS, LLC; ROE CORPORATIONS 1 through 10; and DOES 11 through 20,<br><br>            Defendants. | Case No. A-22-854618-C<br>Dept. No. 13<br>Honorable Mark R. Denton<br><br><br>**DEFENDANT R&R PARTNERS, INC.'S ANSWER TO PLAINTIFF'S COMPLAINT**<br><br>**BUSINESS COURT REQUESTED** |

       Defendant, R&R Partners, Inc. ("Defendant"), by and through their attorneys of record, the

law firm of Fox Rothschild LLP, answer Plaintiff's Complaint (the "Complaint") as follows:

/ / /

1

136089101.1

1.     Answering paragraph 1 of Plaintiff's Complaint, Defendant is without knowledge or information sufficient to admit or deny the allegations in paragraph 1 of the Complaint and on that basis denies the same.

2.     Answering paragraph 2 of Plaintiff's Complaint, Defendant admits that it is a Nevada corporation that legally conducts business in Clark County, Nevada and the State of Nevada.  Since 1974, Defendant has operated as an advertising, marketing, public affairs and public relations firm. Defendant denies the remaining allegations in paragraph 2 of the Complaint.

3.     Answering paragraph 3 of Plaintiff's Complaint, Defendant admits that it is generally aware that Defendant Farra Foxdog Productions, LLC is in the video and audio production business. Defendant is without knowledge or information sufficient to admit or deny the remaining allegations in paragraph 3 of the Complaint and on that basis denies the same.

4.     Answering paragraph 4 of Plaintiff's Complaint, Defendant is without knowledge or information sufficient to admit or deny the allegations in paragraph 4 of the Complaint and on that basis denies the same.

5.     The allegations in paragraph 5 of Plaintiff's Complaint call for legal conclusions and therefore do not require a response from Defendant.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

6.     Answering paragraph 6 of Plaintiff's Complaint, Defendant is without knowledge or information sufficient to admit or deny the allegations in paragraph 6 of the Complaint and on that basis denies the same.

7.     Answering paragraph 7 of Plaintiff's Complaint, Defendant admits that Plaintiff promoted a video series entitled "What's Up Vegas" (referenced in the Complaint as "The Series") to Defendant.  Defendant further admits that the promotional materials attached as Exhibit 1 to the Complaint speak for themselves.  Defendant is without knowledge or information sufficient to admit or deny the remaining allegations in paragraph 7 of the Complaint and on that basis denies the same.

8.     The allegations in paragraph 8 of Plaintiff's Complaint call for legal conclusions and therefore do not require a response from Defendant.

136089101.1

9. Defendant denies the allegations of paragraph 9 of the Complaint.

10. Answering paragraph 10 of Plaintiff's Complaint, Defendant admits that discussions and communications with Plaintiff concerning the Series occurred in 2019. Except as so admitted, Defendant denies the remaining allegations in paragraph 10 of the Complaint.

11. Answering paragraph 11 of Plaintiff's Complaint, Defendant admits that the promotional materials attached as Exhibit 1 to the Complaint speak for themselves and further admits that Plaintiff provided these materials or similar materials to Defendant. Except as so admitted, Defendant denies the remaining allegations in paragraph 11 of the Complaint.

12. Answering paragraph 12 of Plaintiff's Complaint, Defendant admits that the promotional materials attached as Exhibits 2 and 3 to the Complaint speak for themselves. Except as so admitted, Defendant denies the remaining allegations in paragraph 12 of the Complaint and alleges that "Only Vegas" was a separate proposed project that was distinct from the Series.

13. Defendant denies the allegations in paragraph 13 of the Complaint.

14. Defendant denies the allegations in paragraph 14 of the Complaint.

15. Answering paragraph 15 of Plaintiff's Complaint, Defendant admits that discussions and communications between the parties concerning The Series and "Only Vegas" are memorialized in certain writings. Except as so admitted, Defendant denies the remaining allegation in paragraph 15 of the Complaint.

16. Defendant denies the allegations in paragraph 16 of the Complaint.

17. Answering paragraph 17 of Plaintiff's Complaint, Defendant admits that in late 2019 it asked Plaintiff to prepare a budget proposal for production of three episodes of The Series and that such a budget was prepared; and Defendant additionally alleges that in early January 2020, Defendant advised Plaintiff that The Series was no longer being considered for production in 2020. Except as so admitted, Defendant denies the remaining allegations of paragraph 17 of the Complaint.

18. Defendant admits that in early 2020 the COVID pandemic struck Las Vegas and much of the world. Except as so admitted, Defendant denies the remaining allegations in paragraph 18 of the Complaint, including all allegations regarding the undefined phrase "The Show."

3

19.     Answering paragraph 19 of Plaintiff's Complaint, Defendant admits that in approximately late April 2020, communications occurred between Defendant and Plaintiff, but they concerned "Only Vegas," which was a proposed project that was separate and distinct from the Series, and Defendant reiterated to Plaintiff that the Series was not being considered for production.  Except as so admitted, Defendant denies the remaining allegations in paragraph 19 of the Complaint, including all allegations regarding The Series and the undefined phrase "The Show."

20.     Answering paragraph 20 of Plaintiff's Complaint, Defendant admits that it executed a Mutual Nondisclosure Agreement ("NDA") with Plaintiff pertaining to "Only Vegas," a proposed project that was separate and distinct from the Series.  Except as so admitted, Defendant denies the remaining allegations in paragraph 20 of the Complaint, including all allegations regarding The Series.

21.     Answering paragraph 21 of Plaintiff's Complaint, Defendant admits that both before and after the NDA was executed, Defendant informed Plaintiff that The Series was no longer being considered for production.  Except as so admitted, Defendant denies the remaining allegations in paragraph 21 of the Complaint.

22.     Defendant admits the allegations in paragraph 22 of Plaintiff's Complaint.

23.     Answering paragraph 23 of Plaintiff's Complaint, Defendant admits that in February 2022 the Defendant, with co-defendant Farra Foxdog Productions, LLC ("Farra Foxdog") and the Las Vegas Convention and Visitors Authority, launched the streaming video production "Vegas On." Except as so admitted, Defendant denies the remaining allegations in paragraph 23 of the Complaint.

24.     Answering paragraph 24 of Plaintiff's Complaint, Defendant is without knowledge or information sufficient to admit or deny the allegations in paragraph 24 of the Complaint regarding Farra Foxdog's public representations and on that basis denies the same, except that Defendant specifically denies that "Vegas On" was based on or is "virtually identical" to the Series.  Additionally, Defendant further denies that "Vegas On" allegedly "was not the result of an independent creation" because, in fact, Farra Foxdog's work on "Vegas On" and its submission of that project to Defendant preceded Plaintiff's communications with Defendant regarding The Series.

25.     Defendant admits the allegations in paragraph 25 of the Complaint.

4

## FIRST CLAIM FOR RELIEF: MISAPPROPRIATION OF TRADE SECRETS

26.    Paragraph 26 of the Complaint makes no factual allegations and therefore does not require a response.

27.    Defendant denies the allegations of paragraph 27 of the Complaint.

28.    Defendant denies the allegations of paragraph 28 of the Complaint.

29.    Defendant denies the allegations of paragraph 29 of the Complaint.

30.    Defendant denies the allegations of paragraph 30 of the Complaint.

31.    Defendant denies the allegations of paragraph 31 of the Complaint.

32.    Defendant denies the allegations of paragraph 32 of the Complaint.

33.    Defendant denies the allegations of paragraph 33 of the Complaint.

34.    Defendant denies the allegations of paragraph 34 of the Complaint.

35.    Defendant denies the allegations in paragraph 35 of the Complaint.

## SECOND CLAIM FOR RELIEF: CONVERSION OF INTELLECTUAL PROPERTY

36.    Paragraph 36 of the Complaint makes no factual allegations and therefore does not require a response.

37.    Defendant denies the allegations of paragraph 37 of the Complaint.

38.    Defendant denies the allegations of paragraph 38 of the Complaint.

39.    Defendant denies the allegations of paragraph 39 of the Complaint.

40.    Defendant denies the allegations of paragraph 40 of the Complaint.

## THIRD CLAIM FOR RELIEF: UNJUST ENRICHMENT

41.    Paragraph 41 of the Complaint makes no factual allegations and therefore does not require a response.

42.    Defendant denies the allegations of paragraph 42 of the Complaint.

43.    Defendant denies the allegations of paragraph 43 of the Complaint.

44.    Defendant denies the allegations of paragraph 44 of the Complaint.

45.    Defendant denies the allegations of paragraph 45 of the Complaint.

/ / /

136089101.1

## FOURTH CLAIM FOR RELIEF: BREACH OF CONTRACT

46.    Paragraph 46 of the Complaint makes no factual allegations and therefore does not require a response.

47.    Defendant denies the allegations of paragraph 47 of the Complaint.

48.    Defendant denies the allegations of paragraph 48 of the Complaint.

49.    Defendant denies the allegations of paragraph 49 of the Complaint.

50.    Defendant denies the allegations of paragraph 50 of the Complaint.

51.    Defendant denies the allegations of paragraph 51 of the Complaint.

52.    Defendant denies the allegations of paragraph 52 of the Complaint.

## GENERAL DENIAL

Any allegations not specifically admitted, explained, modified or denied above are expressly denied.

## AFFIRMATIVE DEFENSES

Defendant pleads the following separate defenses without conceding which side bears the burden of proof and/or the burden of persuasion as to any of the issues raised below.  Defendant reserves the right to assert additional affirmative defenses that discovery indicates are proper.

## FIRST AFFIRMATIVE DEFENSE

Plaintiff's Complaint fails to state a claim upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff is not entitled to relief from or against Defendant because Plaintiff has not sustained any loss, injury, or damage that resulted from any act, omission, or breach by Defendant.

## THIRD AFFIRMATIVE DEFENSE

All injuries and damages, if any, resulting from the acts described in the Complaint were caused in whole by the acts or omissions of Plaintiff.

## FOURTH AFFIRMATIVE DEFENSE

Defendant did not breach any duties allegedly owed to Plaintiff.

/ / /

6

136089101.1

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff's causes of action are barred in whole or in part by the applicable statutes of limitations or repose, or by the equitable doctrines of laches.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff's causes of action are barred by the doctrines of waiver, estoppel, ratification and unclean hands.

### SEVENTH AFFIRMATIVE DEFENSE

All injuries and damages, if any, resulting from the acts described in the Complaint were caused by the acts or omissions of a third party or parties over whom Defendant had no control.

### EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the Statute of Frauds.

### NINTH AFFIRMATIVE DEFENSE

At all times relevant hereto, Defendant has acted in good faith and has not violated any rights which may be secured to Plaintiff under any federal, state or local laws, rules, regulations or guidelines.

### TENTH AFFIRMATIVE DEFENSE

Plaintiff's claims, or the damages it may recover, are barred or at least reduced by its failure to mitigate damages.

### ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff is not entitled to exemplary or punitive damages as at no time material hereto did Defendant act in a willful, wanton, reckless, and/or malicious manner or with reckless disregard of either state or federal law.

### TWELFTH AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which an award of attorneys' fees can be granted.

### THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff has suffered no damages by reason of alleged wrongful conduct; therefore, its claims are moot.

/ / /

136089101.1

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff knowingly and intentionally assumed any and all risks inherent in entering into the relevant contracts.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by its failure to identify with any specificity any information which qualifies as "trade secrets" that was allegedly misappropriated by Defendant.

## SIXTEENTH AFFIRMATIVE DEFENSE

All purported trade secrets were readily ascertainable by proper means at the time of the alleged acquisition, use and/or disclosure.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims for violations of trade secrets laws are barred because Plaintiff failed to take reasonable efforts to protect the secrecy of the alleged trade secrets.

## EIGHTEENTH AFFIRMATIVE DEFENSE

The information Plaintiff claims in the Complaint as trade secrets does not meet the definition of trade secret as defined in NRS 600A.030(5) or any other legal or statutory authority.

## NINETEENTH AFFIRMATIVE DEFENSE

Defendant's acts and/or omissions do not meet the criteria for misappropriation as defined in NRS 600A.030(2) or any other legal or statutory authority.

## TWENTIETH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because Defendant's receipt or use, if any, of information alleged to be confidential, intellectual property or trade secret was innocent, as the receipt of use of any such information, if any, was through public domain and/or third-party sources lawfully possessing such information, including co-defendant Farra Foxdog.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because the Complaint, and each purported cause of action alleged therein, is preempted by the Copyright Act, including under Copyright Act Section 301(a), 17 U.S.C. § 301(a).

8

## TWENTY-SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because under Copyright Act Sections 411(a) and 412, 17 U.S.C. §§ 411(a) and 412, Plaintiff's failure to register its copyright bars any recovery.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because any information and/or materials alleged to have been converted, misappropriated and/or infringed by Defendant, including any alleged confidential, intellectual property, or trade secret materials purportedly owned or controlled by Plaintiff, were independently created.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of fair use under Copyright Act Section 107, 17 U.S.C. § 107, to the extent any such use occurred, which Defendant denies but here assumes only for the sake of argument.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because any information and/or materials alleged to have been converted, misappropriated and/or infringed by Defendant were unoriginal and common stock elements and scenes-a-faire that also constituted ideas and concepts that are unprotected under Copyright Act Section 102(b), 17 U.S.C. § 102(b).

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

Defendant incorporates all affirmative defenses as set forth in NRCP 8(c).

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

All possible affirmative defenses may not have been alleged herein insofar as insufficient facts were not available after reasonable inquiry, and therefore, Defendant reserves the right to amend its answer to allege additional affirmative defenses if subsequent investigation so warrants.

**WHEREFORE**, Defendant prays for relief as follows:

1.    That Plaintiff's Complaint be dismissed, with prejudice in its entirety;

2.    That Plaintiff take nothing by reason of its Complaint and that Judgment be entered against Plaintiff and in favor of Defendant;

9

136089101.1

1        3.       That Defendant be awarded its costs incurred in defending this action;

2        4.       That Defendant be granted such other and further relief as the Court may deem just

and proper.

Dated this 28th day of July, 2022.

FOX ROTHSCHILD LLP


By     */s/ Colleen E. McCarty*
        COLLEEN E. MCCARTY
        Nevada Bar No. 13186
        1980 Festival Plaza Drive, Suite 700
        Las Vegas, NV 89135
        Telephone: (702) 262-6899

        DAVID ARONOFF
        Cal. Bar No. 125694 (pro hac vice
        forthcoming)
        JOSHUA BORNSTEIN
        Cal. Bar No. 311658 (pro hac vice
        forthcoming)
        10250 Constellation Blvd, Suite 900
        Los Angeles, CA 90067
        Telephone: (310) 598-4150

        *Attorneys for Defendant*
        *R&R Partners, Inc.*

10

**CERTIFICATE OF SERVICE**

I certify that I am an employee of Fox Rothschild LLP, and on the 28th day of July, 2022, I served a true and correct copy of the foregoing **DEFENDANT R&R PARTNERS, INC.'S ANSWER TO PLAINTIFF'S COMPLAINT** via electronic service by operation of the Court's electronic filing system, upon each party and counsel in this case who is registered as an electronic case filing user with the Clerk, as follows:

Bradley L. Booke, Esq.
Law Office of Bradley L. Booke
10161 Park Run Drive, Suite 150
Las Vegas, NV 89145
brad.booke@laebooke.com
*Attorneys for Plaintiff*
*Levy Production Group, LLC*

Marc A. Saggese, Esq.
Mark J. Willoughby, Esq.
SAGGESE & ASSOCIATES, LTD.
732 S. Sixth Street, Suite 201
Las Vegas, Nevada 89101
Marc@MaxLawNV.com
MarkW@MaxLawNV.com
*Attorneys for Defendant*
*Farra Foxdog Productions, LLC*

_/s/ Sherry Harper_
An employee of Fox Rothschild LLP

11

136089101.1

Electronically Filed
7/28/2022 4:52 PM
Steven D. Grierson
CLERK OF THE COURT

**ANS**
**MARC A. SAGGESE, ESQ.**
Nevada Bar No. 7166
**MARK J. WILLOUGHBY, ESQ.**
Nevada Bar No. 14782
**SAGGESE & ASSOCIATES, LTD.**
732 S. Sixth Street, Suite 201
Las Vegas, Nevada 89101
Telephone 702.778.8883
Facsimile 702.778.8884
Marc@MaxLawNV.com
MarkW@MaxLawNV.com
Attorneys for Defendant
FARRA FOXDOG PRODUCTIONS, LLC

## DISTRICT COURT

## CLARK COUNTY, NEVADA

| | |
|---|---|
| LEVY PRODUCTION GROUP, LLC, a Nevada Limited-Liability Company,<br><br>Plaintiffs;<br><br>vs.<br><br>R&R PARTNERS, INC., a Nevada Corporation; FARRA FOXDOG PRODUCTIONS, LLC, a Domestic Limited-Liability Company; ROE CORPORATIONIS 1-10, JOHN DOES 11-20;<br><br>Defendants. | CASE NO.: A-22-854618-C<br>DEPT NO.: XIII<br><br><br><br>**DEFENDANT FARRA FOXDOG PRODUCTIONS, LLC'S ANSWER TO PLAINTIFF'S COMPLAINT** |

COMES NOW, Defendant FARRA FOXDOG PRODUCTIONS, LLC, by and through its attorneys of record, MARC A. SAGGESE, ESQ., and MARK J. WILLOUGHBY, ESQ., of the law firm of SAGGESE & ASSOCIATES, LTD., and hereby answers Plaintiff's Complaint as follows:

1.    In answering Paragraph 1 of Plaintiff's Complaint, Defendant is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained therein and on that basis denies the same.

. . .

2.      In answering Paragraph 2 of Plaintiff's Complaint, Defendant is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained therein and on that basis denies the same.

3.      In answering Paragraph 3 of Plaintiff's Complaint, Defendant admits that it is a Nevada Limited-Liability Company that legally conducts business in Clark County, Nevada and the State of Nevada.  Defendant denies the remaining allegations in Paragraph 3 of the Complaint.

4.      In answering Paragraph 4 of Plaintiff's Complaint, Defendant is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained therein and on that basis denies the same.

5.      The allegations in paragraph 5 of Plaintiff's Complaint call for legal conclusions and therefore do not require a response from Defendant.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

6.      In answering Paragraph 6 of Plaintiff's Complaint, Defendant is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained therein and on that basis denies the same.

7.      Answering paragraph 7 of Plaintiff's Complaint, Defendant admits that Plaintiff promoted a video series entitled "What's Up Vegas" (referenced in the Complaint as "The Series") to Defendant.  Defendant further admits that the promotional materials attached as Exhibit 1 to the Complaint speak for themselves.  Defendant is without knowledge or information sufficient to admit or deny the remaining allegations in paragraph 7 of the Complaint and on that basis denies the same.

8.      The allegations in paragraph 8 of Plaintiff's Complaint call for legal conclusions and therefore do not require a response from Defendant.

9.      In answering Paragraph 9 of Plaintiff's Complaint, Defendant denies the allegations contained therein.

. . .

. . .

10. In answering Paragraph 10 of Plaintiff's Complaint, Defendant is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained therein and on that basis denies the same.

11. In answering Paragraph 11 of Plaintiff's Complaint, Defendant is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained therein and on that basis denies the same.

12. In answering Paragraph 12 of Plaintiff's Complaint, Defendant is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained therein and on that basis denies the same.

13. In answering Paragraph 13 of Plaintiff's Complaint, Defendant is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained therein and on that basis denies the same.

14. In answering Paragraph 14 of Plaintiff's Complaint, Defendant is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained therein and on that basis denies the same.

15. In answering Paragraph 15 of Plaintiff's Complaint, Defendant is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained therein and on that basis denies the same.

16. In answering Paragraph 16 of Plaintiff's Complaint, Defendant is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained therein and on that basis denies the same.

17. In answering Paragraph 17 of Plaintiff's Complaint, Defendant is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained therein and on that basis denies the same.

18. In answering Paragraph 18 of Plaintiff's Complaint, Defendant is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained therein and on that basis denies the same.

. . .

19.    In answering Paragraph 19 of Plaintiff's Complaint, Defendant is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained therein and on that basis denies the same.

20.    In answering Paragraph 20 of Plaintiff's Complaint, Defendant is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained therein and on that basis denies the same.

21.    In answering Paragraph 21 of Plaintiff's Complaint, Defendant is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained therein and on that basis denies the same.

22.    In answering Paragraph 22 of Plaintiff's Complaint, Defendant is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained therein and on that basis denies the same.

23.    Answering paragraph 23 of Plaintiff's Complaint, Defendant admits that in February 2022 the Defendant, with co-defendant R & R Partners, Inc. (hereinafter "R & R") and the Las Vegas Convention and Visitors Authority, launched the streaming video production "Vegas On."  Except as so admitted, Defendant denies the remaining allegations in paragraph 23 of the Complaint.

24.    In answering Paragraph 24 of Plaintiff's Complaint, Defendant denies the allegations contained therein.

25.    In answering Paragraph 25 of Plaintiff's Complaint, Defendant admits the allegations contained therein.

**FIRST CLAIM FOR RELIEF: MISAPPROPRIATION OF TRADE SECRETS**

26.    Paragraph 26 of the Complaint makes no factual allegations and therefore does not require a response.

27.    In answering Paragraph 27 of Plaintiff's Complaint, Defendant denies the allegations contained therein.

28.    In answering Paragraph 28 of Plaintiff's Complaint, Defendant denies the allegations contained therein.

29.     In answering Paragraph 29 of Plaintiff's Complaint, Defendant denies the allegations contained therein.

30.     In answering Paragraph 30 of Plaintiff's Complaint, Defendant denies the allegations contained therein.

31.     In answering Paragraph 31 of Plaintiff's Complaint, Defendant denies the allegations contained therein.

32.     In answering Paragraph 32 of Plaintiff's Complaint, Defendant denies the allegations contained therein.

33.     In answering Paragraph 33 of Plaintiff's Complaint, Defendant denies the allegations contained therein.

34.     In answering Paragraph 34 of Plaintiff's Complaint, Defendant denies the allegations contained therein.

35.     In answering Paragraph 35 of Plaintiff's Complaint, Defendant denies the allegations contained therein.

**SECOND CLAIM FOR RELIEF: CONVERSION OF INTELLECTUAL PROPERTY**

36.     Paragraph 36 of the Complaint makes no factual allegations and therefore does not require a response.

37.     In answering Paragraph 37 of Plaintiff's Complaint, Defendant denies the allegations contained therein.

38.     In answering Paragraph 38 of Plaintiff's Complaint, Defendant denies the allegations contained therein.

39.     In answering Paragraph 39 of Plaintiff's Complaint, Defendant denies the allegations contained therein.

40.     In answering Paragraph 40 of Plaintiff's Complaint, Defendant denies the allegations contained therein.

. . .

. . .

. . .

## <u>THIRD CLAIM FOR RELIEF: UNJUST ENRICHMENT</u>

41.    Paragraph 41 of the Complaint makes no factual allegations and therefore does not require a response.

42.    In answering Paragraph 42 of Plaintiff's Complaint, Defendant denies the allegations contained therein.

43.    In answering Paragraph 43 of Plaintiff's Complaint, Defendant denies the allegations contained therein.

44.    In answering Paragraph 44 of Plaintiff's Complaint, Defendant denies the allegations contained therein.

45.    In answering Paragraph 45 of Plaintiff's Complaint, Defendant denies the allegations contained therein.

## <u>FOURTH CLAIM FOR RELIEF: BREACH OF CONTRACT</u>

46.    Paragraph 46 of the Complaint makes no factual allegations and therefore does not require a response.

47.    In answering Paragraph 47 of Plaintiff's Complaint, Defendant denies the allegations contained therein.

48.    In answering Paragraph 48 of Plaintiff's Complaint, Defendant denies the allegations contained therein.

49.    In answering Paragraph 49 of Plaintiff's Complaint, Defendant denies the allegations contained therein.

50.    In answering Paragraph 50 of Plaintiff's Complaint, Defendant denies the allegations contained therein.

51.    In answering Paragraph 51 of Plaintiff's Complaint, Defendant denies the allegations contained therein.

52.    In answering Paragraph 52 of Plaintiff's Complaint, Defendant denies the allegations contained therein.

. . .

. . .

## **GENERAL DENIAL**

Any allegations not specifically admitted, explained, modified or denied above are expressly denied.

## **AFFIRMATIVE DEFENSES**

Defendant pleads the following separate defenses without conceding which side bears the burden of proof and/or the burden of persuasion as to any of the issues raised below.  Defendant reserves the right to assert additional affirmative defenses that discovery indicates are proper.

## **FIRST AFFIRMATIVE DEFENSE**

Plaintiff's Complaint fails to state a claim upon which relief may be granted.

## **SECOND AFFIRMATIVE DEFENSE**

Plaintiff is not entitled to relief from or against Defendant because Plaintiff has not sustained any loss, injury, or damage that resulted from any act, omission, or breach by Defendant.

## **THIRD AFFIRMATIVE DEFENSE**

All injuries and damages, if any, resulting from the acts described in the Complaint were caused in whole by the acts or omissions of Plaintiff.

## **FOURTH AFFIRMATIVE DEFENSE**

Defendant did not breach any duties allegedly owed to Plaintiff.

## **FIFTH AFFIRMATIVE DEFENSE**

Plaintiff's causes of action are barred in whole or in part by the applicable statutes of limitations or repose, or by the equitable doctrines of laches.

## **SIXTH AFFIRMATIVE DEFENSE**

Plaintiff's causes of action are barred by the doctrines of waiver, estoppel, ratification and unclean hands.

## **SEVENTH AFFIRMATIVE DEFENSE**

All injuries and damages, if any, resulting from the acts described in the Complaint were caused by the acts or omissions of a third party or parties over whom Defendant had no control.

. . .

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the Statute of Frauds.

## NINTH AFFIRMATIVE DEFENSE

At all times relevant hereto, Defendant has acted in good faith and has not violated any rights which may be secured to Plaintiff under any federal, state or local laws, rules, regulations or guidelines.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff's claims, or the damages it may recover, are barred or at least reduced by its failure to mitigate damages.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff is not entitled to exemplary or punitive damages as at no time material hereto did Defendant act in a willful, wanton, reckless, and/or malicious manner or with reckless disregard of either state or federal law.

## TWELFTH AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which an award of attorneys' fees can be granted.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff has suffered no damages by reason of alleged wrongful conduct; therefore, its claims are moot.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff knowingly and intentionally assumed any and all risks inherent in entering into the relevant contracts.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by its failure to identify with any specificity any information which qualifies as "trade secrets" that was allegedly misappropriated by Defendant.

. . .

. . .

**SIXTEENTH AFFIRMATIVE DEFENSE**

All purported trade secrets were readily ascertainable by proper means at the time of the alleged acquisition, use and/or disclosure.

**SEVENTEENTH AFFIRMATIVE DEFENSE**

Plaintiff's claims for violations of trade secrets laws are barred because Plaintiff failed to take reasonable efforts to protect the secrecy of the alleged trade secrets.

**EIGHTEENTH AFFIRMATIVE DEFENSE**

The information Plaintiff claims in the Complaint as trade secrets does not meet the definition of trade secret as defined in NRS 600A.030(5) or any other legal or statutory authority.

**NINETEENTH AFFIRMATIVE DEFENSE**

Defendant's acts and/or omissions do not meet the criteria for misappropriation as defined in NRS 600A.030(2) or any other legal or statutory authority.

**TWENTIETH AFFIRMATIVE DEFENSE**

Plaintiff's claims are barred, in whole or in part, because Defendant's receipt or use, if any, of information alleged to be confidential, intellectual property or trade secret is innocent, as the receipt of use of any such information, if any, was through public domain and/or third-party sources lawfully possessing such information, including co-defendant R&R Partners, Inc.

**TWENTY-FIRST AFFIRMATIVE DEFENSE**

Plaintiff's claims are barred, in whole or in part, because the Complaint, and each purported cause of action alleged therein, is preempted by the Copyright Act, including under Copyright Act Section 301(a), 17 U.S.C. § 301(a).

**TWENTY-SECOND AFFIRMATIVE DEFENSE**

Plaintiff's claims are barred, in whole or in part, because under Copyright Act Sections 411(a) and 412, 17 U.S.C. §§ 411(a) and 412, Plaintiff's failure to register its copyright bars any recovery.

. . .

. . .

. . .

## TWENTY-THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because any information and/or materials alleged to have been converted, misappropriated and/or infringed by Defendant, including any alleged confidential, intellectual property, or trade secret materials purportedly owned or controlled by Plaintiff, were independently created.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of fair use under Copyright Act Section 107, 17 U.S.C. § 107, to the extent any such use occurred, which Defendant denies but here assumes only for the sake of argument.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because any information and/or materials alleged to have been converted, misappropriated and/or infringed by Defendant were unoriginal and common stock elements and scenes-a-faire that also constituted ideas and concepts that are unprotected under Copyright Act Section 102(b), 17 U.S.C. § 102(b).

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

Defendant incorporates all affirmative defenses as set forth in NRCP 8(c).

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

All possible affirmative defenses may not have been alleged herein insofar as insufficient facts were not available after reasonable inquiry, and therefore, Defendant reserves the right to amend its answer to allege additional affirmative defenses if subsequent investigation so warrants.

. . .

. . .

. . .

. . .

. . .

. . .

. . .

1

**WHEREFORE**, Defendant prays for relief as follows:

2

That Plaintiff's Complaint be dismissed, with prejudice in its entirety;

3

That Plaintiff take nothing by reason of its Complaint and that Judgment be

4

entered against Plaintiff and in favor of Defendant;

5

That Defendant be awarded its costs incurred in defending this action;

6

That Defendant be granted such other and further relief as the Court may deem

7

just and proper.

8

9

DATED this 28th day of July, 2022.

10

11

Respectfully Submitted By:

12

/s/ Marc A. Saggese

13

_____

**MARC A. SAGGESE, ESQ.**

14

Nevada Bar No. 7166

**MARK J. WILLOUGHBY, ESQ.**

15

Nevada Bar No. 14782

**SAGGESE & ASSOCIATES, LTD.**

16

732 S. Sixth Street, Suite 201

17

Las Vegas, Nevada 89101

Telephone 702.778.8883

18

Facsimile 702.778.8884

19

Marc@MaxLawNV.com

MarkW@MaxLawNV.com

20

Attorneys for Defendant

FARRA FOXDOG PRODUCTIONS, LLC

21

22

23

24

25

26

27

28

**<u>CERTIFICATE OF SERVICE</u>**

I certify that that on the 28th day of July, 2022, I forwarded a copy of the above and

foregoing **DEFENDANT FARRA FOXDOG PRODUCTIONS, LLC'S ANSWER TO**

**PLAINTIFF'S COMPLAINT** as follows:

__X_  by mandatory electronic service (e-service), proof of e-service attached to any copy filed

with the Court; or

_____ by causing a true and correct copy to be placed in the United States Mail, with first class

postage prepaid thereon, and addressed as follows:

        Bradley L. Booke, Esq.
        LAW OFFICE OF BRADLEY L. BOOKE
        10161 Park Run Drive #150
        Las Vegas, Nevada 89145
        Attorney for Plaintiff
        LEVY PRODUCTION GROUP, LLC

        Colleen E. McCarty, Esq.
        David Aronoff, Esq.
        Joshua Bornstein, Esq.
        FOX ROTHSCHILD LLP
        1980 Festival Plaza Drive, Suite 700
        Las Vegas, NV 89135
        Attorneys for Defendant
        R&R PARTNERS, INC.

                                   /s/ Stephanie Algera

                         _____
                         An Employee of Saggese & Associates, Ltd.

A-22-854618-B

# DISTRICT COURT
## CLARK COUNTY, NEVADA

| Other Business Court Matters | COURT MINUTES | August 01, 2022 |
| --- | --- | --- |

| A-22-854618-B | Levy Production Group LLC, Plaintiff(s) |
| | vs. |
| | R & R Partners Inc, Defendant(s) |

**August 01, 2022**      **4:30 PM**      **Minute Order**               **Recusal**

**HEARD BY:**   Denton, Mark R.                    **COURTROOM:**   Chambers

**COURT CLERK:**   Quara Pyatt

## JOURNAL ENTRIES

The Court's son-in-law is employed as an attorney by the law firm representing Defendant Farra Foxdog Productions, LLC.  Therefore, to avoid the appearance of impropriety and implied bias, this Court hereby recuses itself and ORDERS this matter be reassigned to another Business Court Department.  Canon 2, Rule 2.11(A)(2)(b)

CLERK'S NOTE:  This Minute Order was electronically served by Courtroom Clerk, Quara Pyatt, to all registered parties for Odyssey File & Serve. / (08-01-2022)

PRINT DATE:      08/01/2022             Page 1 of 1          Minutes Date:      August 01, 2022

# EXHIBIT B

## Case Information

A-22-854618-B | Levy Production Group LLC, Plaintiff(s) vs. R & R Partners Inc, Defendant(s)

| | | |
|---|---|---|
| Case Number | Court | Judicial Officer |
| A-22-854618-B | Department 22 | Johnson, Susan |
| File Date | Case Type | Case Status |
| 06/27/2022 | Other Business Court Matters | Open |

## Party

Plaintiff
Levy Production Group LLC

Active Attorneys ▾
Lead Attorney
Booke, Bradley L.
Retained

Defendant
R & R Partners Inc

Active Attorneys ▾
Lead Attorney
McCarty, Colleen E.
Retained

Defendant
Farra Foxdog Productions LLC

Active Attorneys ▾
Lead Attorney
Saggese, Marc A.
Retained

Attorney
Willoughby, Mark J.
Retained

## Events and Hearings

06/27/2022 Complaint With Jury Demand ▼

Comment
[1] Complaint and Jury Demand

06/27/2022 Initial Appearance Fee Disclosure ▼

Comment
[2] Initial Appearance Fee Disclosure

06/27/2022 Summons Electronically Issued - Service Pending ▼

Comment
[3] Summons

06/29/2022 Clerk's Notice of Nonconforming Document ▼

Comment
[4] Clerk's Notice of Nonconforming Document

07/05/2022 Clerk's Notice of Nonconforming Document and Curative Action ▼

Comment
[5] Clerk's Notice of Nonconforming and Curative Action

07/07/2022 Proof of Service ▼

Comment
[6] Proof of Service to Farra Foxdog Productions, LLC

07/11/2022 Proof of Service ▼

Comment
[7] Declaration of Service to R&R Partners, Inc.

07/27/2022 Peremptory Challenge ▼

Comment
[8] Peremptory Challenge of Judge

07/28/2022 Notice of Department Reassignment ▾

Comment
[9] Notice of Department Reassignment

07/28/2022 Answer to Complaint ▾

Comment
[10] Defendant R&R Partners, Inc.'s Answer to Plaintiff's Complaint

07/28/2022 Request to Transfer to Business Court ▾

Comment
[11] Request to Transfer to Business Court

07/28/2022 Initial Appearance Fee Disclosure ▾

Comment
[12] Initial Appearance Fee Disclosure

07/28/2022 Answer ▾

Comment
[13] Defendant Farra Foxdog Productions, LLC's Answer to Plaintiff's Complaint

08/01/2022 Minute Order ▾

Judicial Officer
Denton, Mark R.

Hearing Time
4:30 PM

Result
Minute Order - No Hearing Held

Comment
Recusal

08/03/2022 Notice of Department Reassignment ▾

Comment
[14] Notice of Department Reassignment

## Financial

Levy Production Group LLC

|  |  |  |  |  |
|---|---|---|---|---|
|  | Total Financial Assessment |  |  | $270.00 |
|  | Total Payments and Credits |  |  | $270.00 |
| 6/27/2022 | Transaction Assessment |  |  | $270.00 |
| 6/27/2022 | Efile Payment | Receipt # 2022-36127-CCCLK | LEVY PRODUCTION GROUP, LLC | ($270.00) |

R & R Partners Inc

|  |  |  |  |  |
|---|---|---|---|---|
|  | Total Financial Assessment |  |  | $1,483.00 |
|  | Total Payments and Credits |  |  | $1,483.00 |
| 7/28/2022 | Transaction Assessment |  |  | $1,483.00 |
| 7/28/2022 | Efile Payment | Receipt # 2022-43044-CCCLK | R & R Partners Inc | ($1,483.00) |

Farra Foxdog Productions LLC

|  |  |  |  |  |
|---|---|---|---|---|
|  | Total Financial Assessment |  |  | $2,156.00 |
|  | Total Payments and Credits |  |  | $673.00 |
| 7/27/2022 | Transaction Assessment |  |  | $450.00 |
| 7/27/2022 | Efile Payment | Receipt # 2022-42514-CCCLK | Farra Foxdog Productions LLC | ($450.00) |
| 7/28/2022 | Transaction Assessment |  |  | $223.00 |
| 7/28/2022 | Efile Payment | Receipt # 2022-43054-CCCLK | Farra Foxdog Productions LLC | ($223.00) |
| 8/2/2022 | Transaction Assessment |  |  | $1,483.00 |